LIBERO P. BALDARELLI AND RITA I. BALDARELLI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JACK H. AND ERLENE SHAFFER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3338–70, 3482–70.   Filed October 9, 1973.

*Charles W. Froehlich, Jr.*, and *Edward E. Weissman*, for the petitioners in docket No. 3338–70.

*Gino P. Cecchi*, for the petitioners in docket No. 3482–70.

*Randall G. Dick*, for the respondent.

DAWSON, *Judge:* * In these consolidated cases the respondent determined the following Federal income tax deficiencies:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Libero P. and Rita I. Baldarelli | 3338–70 | 1966 | $4,481.73 |
| | | 1967 | 25,120.04 |
| Jack H. and Erlene Shaffer | 3482–70 | 1966 | 11,158.00 |

*Pursuant to a notice of reassignment sent to counsel for all parties, and to which no objections were filed, these cases were reassigned on Aug. 9, 1973, from Judge Austin Hoyt to Judge Howard A. Dawson, Jr., for disposition.

We must decide the proper treatment under sections 167 and 1221, I.R.C. 1954,[1] to be given certain payments made pursuant to a sale of a partnership interest. Respondent initially took inconsistent positions in order to protect the revenue by denying to the buyer amortization of an alleged covenant not to compete while simultaneously denying capital gain treatment to the seller. In his brief the respondent has chosen to side with the seller.

FINDINGS OF FACT

Some of the facts have been stipulated. This stipulation and the exhibits attached thereto are incorporated herein by this reference.

Libero P. and Rita I. Baldarelli, husband and wife, were legal residents of Sacramento, Calif., when they filed their petition herein. Their joint Federal income tax returns for the years 1966 and 1967 were prepared on the cash receipts and disbursements method and were filed with the district director of internal revenue at San Francisco, Calif.

Jack H. and Erlene Shaffer, husband and wife, were legal residents of Concord, Calif., when they filed their petition herein. Their joint Federal income tax returns for the years 1966 and 1967 were prepared on the cash receipts and disbursements method and were filed with the Internal Revenue Service Center at Ogden, Utah.

On July 1, 1961, Baldarelli agreed with H & R Block, Inc., that in consideration for his operating an H & R Block tax return preparation service, H & R Block would grant him a franchise to operate in San Francisco and Oakland, Calif. The franchise was to be operated only under the name of H & R Block, Inc. The franchise agreement specifically detailed the services to be provided by Baldarelli. The hours of operation were set; the source and price of any forms used were determined; and the required accuracy and quality control of the final work product were specified. Baldarelli agreed to charge for his service according to a schedule of fees established by H & R Block, Inc.

For the use and recognition of the corporate name H & R Block, Inc., Baldarelli promised to pay a certain percentage of his gross receipts with a discount for prompt payment.

Baldarelli retained the right to "sell, assign, transfer or convey in any lawful manner," his rights under the agreement subject to the approval of H & R Block, Inc. Such approval was not to be "unreasonably" withheld.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Baldarelli agreed that if the franchise agreement was terminated by virtue of a breach on his part he would not, directly or indirectly, compete with H & R Block, Inc., for 5 years. No geographic limitation to this covenant was provided. No specific value was assigned to this portion of the franchise agreement.

On December 14, 1962, Baldarelli, without objection from H & R Block, Inc., amended the franchise agreement by making two additional individuals parties to the franchise agreement. The additional parties were George Brenner and Jack Shaffer.

Prior to this, on December 12, 1962, Baldarelli, Brenner, and Shaffer entered into a joint venture agreement. They agreed to form a corporation to be called Libero Corp. with ownership to be 60 percent to Baldarelli and 20 percent to Brenner and 20 percent to Shaffer. The joint venture agreed to abide by the terms and conditions of the franchise agreement with H & R Block, Inc.

Brenner and Shaffer were to divide equally the first $16,000 in yearly profits. Profits greater than that amount were to be distributed according to percentage of ownership. If yearly profits reached $100,000, Brenner and Shaffer each agreed to relinquish one-half of their interest in the venture. At that point they were each to receive a yearly salary of $20,000.

There were provisions dealing with the withdrawal of either Brenner or Shaffer from the joint venture. Neither would have any interest whatsoever in the H & R Block, Inc., franchise; however, their capital contribution of $1,000 would be returned.

The agreement of December 12, 1962, was amended to provide alternative procedures following the withdrawal of Brenner or Shaffer from the joint venture and to provide a buy-out price for a portion of any deceased joint venturer's interest.

On December 16, 1962, the three joint venturers agreed to assign all their rights under the H & R Block, Inc., franchise to the Libro [2] Corp. It was agreed that any ownership interest in the franchise would exist only to the extent of stock ownership in the corporation. No such corporation was formed prior to July 1966.

Partnership returns (Form 1065) were filed for 1963, 1964, 1965, and 1966 (to June 30, 1966). Each of these returns listed Baldarelli, Brenner, and Shaffer as partners. The profits for these years were apportioned in accordance with the ratio established in the joint venture agreement.

On June 21, 1966, Baldarelli and Shaffer signed an agreement whereby Shaffer sold and Baldarelli bought Shaffer's partnership interest in the H & R Block, Inc., franchise operation. At that time

[2] This agreement used this spelling. All other references in the record are to the Libero Corp. Libero is the first name of Baldarelli, petitioner in docket No. 3338–70.

Baldarelli, Shaffer, and Brenner were parties to a total of 11 franchise agreements with H & R Block, Inc., all with respect to operations in California. This sales agreement recognized that Baldarelli owned 60 percent of the partnership and desired to acquire Shaffer's 20-percent interest.[3]

For Shaffer's interest in the partnership Baldarelli agreed to pay $45,000 in annual installments of $11,250. Payment was evidenced by four unsecured promissory notes bearing interest at 5 percent per annum. Had the franchises under which the partnership was operating been lost due to conditions beyond the control of the parties to the sales agreement, the balance due on the promissory notes was to be forgiven. This was the only condition attached to the sales price. No allocation of any sort was made with respect to the sales price.

Shaffer's share of the profits for the year of sale was to be computed after adjustments for numerous contingent claims and withdrawals.

Paragraph 5 of the Sale and Purchase of Partnership Interest Agreement signed by the parties provided as follows:

5. COVENANT NOT TO COMPETE: Seller expressly agrees that he shall not hereafter engage, directly or indirectly, actively or inactively, in any phase of the tax service business as such is now generally conducted, or may hereafter be conducted, within the States of California and Nevada, for a period of three (3) years from the date of this agreement, and said proscription shall apply whether Seller be engaged as a partner, as sole proprietor, an officer, director or shareholder of a corporation, or as an employee of any such, or similar, business entity, except that Seller shall have the right to be employed, solely in the status of an employee, in the tax service business hereafter provided, however, he is compensated only upon an hourly or weekly basis for his personal services rendered and that he in no way shares in profits from said business, either directly or indirectly, on a profit sharing or other incentive basis related to profits or efficiency of said tax service business. The continuing partners in said joint venture shall have the exclusive right to utilize the firm name of said partnership and Seller does expressly agree that he shall not, directly or indirectly, utilize or appropriate said name or any other name similar to said name, whether such similarity be in spelling, style or connotation.

Rough drafts of the final agreement show significant changes in terms and conditions of the sale. Both of the rough drafts contain a covenant not to compete. The only difference between the two is that the first covenant provides that the seller could not engage in the tax preparation business for 3 years within the States of California and Nevada. The second draft makes explicit the seller's permissible work activities. He could work only as an hourly paid employee of such a

---

[3] The amendment of Dec. 12, 1962, provided that when profits reached $100,000 both Brenner and Shaffer were to relinquish 50 percent of their holdings to Baldarelli. Although profits had reached this level no such transfer was made. The June 21, 1966, sales agreement provided that Shaffer was selling his 20-percent interest in the joint venture.

tax preparation service and could not receive any distribution of profits from the service.

Shaffer received legal advice throughout the negotiations leading up to the sale of his partnership interest. He was advised that a covenant not to compete would violate California law and was probably void.

Shaffer was selling his interest because of a dispute with his other partners. He was also interested in attending graduate school at the University of California at Berkeley and in fact was admitted for the fall quarter of 1966.

The agreed price for Shaffer's interest in the partnership was $45,000. On his 1966 Federal income tax return (Schedule D) Shaffer reported the transaction as follows:

*Partnership interest*

| | |
|---|---|
| Acquired | January 1963 |
| Sold | October 1966 |
| Sales price | $45,000 |
| Cost | 2,692 |
| Gain | 42,308 |

Installment sale method elected, no downpayment in year of sale. Percentage of profit=94%

In 1966 Shaffer reported the receipt as income of a partnership distributable share of $29,305. In 1967 Shaffer reported the receipt of $11,250 on the installment basis. Using a 94-percent profit ratio, he computed his long-term capital gain as $10,575.

Shaffer treated the receipt of each payment as long-term capital gain from the sale of goodwill—a capital asset. Baldarelli treated the payments made as amortization of a covenant not to compete and deducted the payments in the years he made them.

### OPINION

Two partners who operated a tax preparation service had a falling out and they decided to terminate their relationship. One partner bought the other's interest for $45,000. Their agreement contained a covenant not to compete binding the seller. No specific value was assigned to the covenant. The parties realize that this item has important tax consequences. If the selling partner sold goodwill—a capital asset—he is entitled to capital gain treatment. *Aaron Michaels*, 12 T.C. 17, 19 (1949). If he sold only the right to practice some calling, he has in effect received consideration for his forbearance. *Hamlin's Trust* v. *Commissioner*, 209 F. 2d 761 (C.A. 10, 1954). The amount received would be treated and taxed as ordinary income. The buyer, now giving

thought to his actions, has realized that if someone sold a capital asset, he must have bought one. If so, he has bought a special kind of capital asset—one without a determinable useful life and therefore not depreciable. See *Thrifticheck Service Corp.* v. *Commissioner*, 287 F. 2d 1 (C.A. 2, 1961), affirming 33 T.C. 1038 (1960) ; *Manhattan Co. of Virginia, Inc.*, 50 T.C. 78 (1968) ; *Boe* v. *Commissioner*, 307 F. 2d 339 (C.A. 9, 1962), affirming 35 T.C. 720 (1961). If in fact the buyer bought a covenant not to compete, he has in law obligated himself to pay the seller an "amount" not to do something. This amount is a deductible item through the amortization of the covenant over its stated life. See 3B Mertens, Law of Federal Income Taxation, sec. 22.33 (1966 rev.), and numerous cases cited therein.

Our task is to decide just what was bought and what was sold. First, we must look at the legal standard by which the burden of proof must be measured. Respondent, as he has many times before, urges us to formally adopt the rule set forth in *Commissioner* v. *Danielson*, 378 F. 2d 771, 775 (C.A. 3, 1967), vacating and remanding 44 T.C. 549 (1965), certiorari denied 389 U.S. 858 (1967), rather than the "strong proof" rule of *Ullman* v. *Commissioner*, 264 F. 2d 305, 308 (C.A. 2, 1959), affirming 29 T.C. 129 (1957). He contends that the Court of Appeals for the Ninth Circuit requires the *Danielson* rule. We disagree. None of the cases cited by respondent deal with covenants not to compete. The closest case to the *Danielson* rule is *Brockway's Estate* v. *Commissioner*, 219 F. 2d 400 (C.A. 9, 1954), where the court, citing and quoting *Greenwood* v. *Commissioner*, 134 F. 2d 915, 921 (C.A. 9, 1943), states: "In the absence of clear and convincing evidence that the parties had a contrary intent those instruments must be permitted to speak for themselves." This is not equivalent to the standard of proof mandated in the *Danielson* case by the Third Circuit. The parol evidence rule was invoked because parties to valid agreements were simply trying to vary the terms of their agreements rather than explain an ambiguity.

In view of our opinion in *Jack E. Golsen*, 54 T.C. 742, 756–758 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971), we will apply the *Danielson* rule in the Third Circuit. However, we will continue to adhere to the "strong proof" rule in circuits which do not follow the *Danielson* rule.

The Court of Appeals for the Ninth Circuit has not yet found it necessary to reach the merits of the *Danielson* rule. See *Throndson* v. *Commissioner*, 457 F. 2d 1022, 1025–1026 (C.A. 9, 1972), affirming sub nom. *J. Leonard Schmitz*, 51 T.C. 306 (1968). In *Schulz* v. *Commissioner*, 294 F. 2d 52, 55 (C.A. 9, 1961), affirming 34 T.C. 235 (1960),

the Ninth Circuit applied the "strong proof" rule to a party seeking to alter a valid contract.

Respondent urges us to take the last step following what he thinks is our "approach" to the *Danielson* rule, citing *Gordon A. Erickson*, 56 T.C. 1112 (1971). In *Erickson* the agreement contained no ambiguity or uncertainty and clearly negated the hypothesis of one of the parties to the agreement who later sought to attach a different construction to its terms. The reversing bookkeeping entry in *Erickson* which gave rise to the dispute was not explained by the party making the reversing entry. There was a total failure of proof on that crucial issue. That being so, it is clearly erroneous to read *Erickson* as applying the *Danielson* rule.[4] Admittedly the "strong proof" rule approaches, but does not equal, the stricter *Danielson* rule.

Alternatively, respondent contends that petitioner Baldarelli has failed to adduce the strong proof necessary to vary the terms of the sales contract.

Respondent advances the argument that there was in fact a partnership between petitioners Baldarelli and Shaffer. Without such a finding respondent points out that under section 16600, Cal. Bus. & Prof. Code (West 1964),[5] the covenant here would be void. Section 16602 [6] of the California Business & Professions Code (West 1964) permits the execution of a covenant not to compete upon the dissolution of a partnership. We have found there was a partnership and Baldarelli no longer seriously contends otherwise.

As respondent views it, the testimony of Shaffer that he would not and could not compete with Baldarelli and the subsequent unilateral allocation by Baldarelli of the entire purchase price to the covenant not to compete are so inconsistent that this Court should simply return to the written agreement and follow it. That agreement did not mention any allocation of the purchase price to the covenant not to compete and that should, according to the respondent, answer the question of what was intended.

The intention of the parties at the time of the execution of their agreement generally controls the value to be placed on the covenant

---

[4] A similar situation arose in *Mills Pharmaceuticals, Inc.*, 57 T.C. 308, 313 (1971), where no evidence was shown that would indicate the contract should be interpreted in a manner at all inconsistent with its clear terms. Reliance on either the "strong proof" or *Danielson* rule lead to the same result.

[5] Sec. 16600. Invalidity of contracts. Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

[6] Sec. 16602. Partners; dissolution; agreement not to compete. Any partner may, upon or in anticipation of a dissolution of the partnership, agree that he will not carry on a similar business within a specified county or counties, city or cities, or a part thereof, where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein.

not to compete. See *Annabelle Candy Co.* v. *Commissioner*, 314 F. 2d 1, 7 (C.A. 9, 1962), which states that the failure to assign a value to the covenant not to compete at the time of execution is "pretty good evidence that no such allocation was intended [although] it is not conclusive on the parties as would be the case if there had been an express affirmance or disavowal in the agreement." [7] For such a specific disavowal see *Robert G. Tomlinson*, 58 T.C. 570, 574 (1972).

We are concerned with whether the failure or refusal to allocate any portion of the purchase price to the covenant bears any "arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for such an agreement." *Schulz* v. *Commissioner, supra* at 55.

Both parties to this agreement were reasonably knowledgeable in the field of Federal taxation. After the agreement was consummated both treated the transaction in a manner most favorable to themselves. Baldarelli knew that Shaffer wanted to go to graduate school and withdraw from the tax return preparation business. Shaffer knew how difficult it would be to compete with Baldarelli's franchises in a field where much effort is expended on advertising and maintaining customer goodwill. Whether such goodwill is the tendency of a former customer to consciously opt to return or is merely inertia, it is nonetheless a difficult habit pattern to alter.

In *Harry A. Kinney*, 58 T.C. 1038 (1972), parties to an agreement failed to allocate any portion of the sales price to the covenant not to compete because they could not agree on an allocation. For various reasons we found in the *Kinney* case that the covenant had substantial value, not the least of which was the agreement between the parties that it had a value. Consequently, we made an allocation. Conversely, in *Rich Hill Insurance Agency, Inc.*, 58 T.C. 610 (1972), where no allocation was made by the parties, the agreement was not changed. We found that in other insurance agency purchases, where competition was reasonably anticipated, the knowledgeable purchaser in *Rich Hill* consistently demanded and received a covenant not to compete and allocated 50 percent of the purchase price to such covenants. Since no such competition was expected in *Rich Hill* and no covenant was sought, we would not imply one. Where no value could reasonably be found to be attributable to the covenant, no allocation is permissible. See *Roy W. Johnson*, 53 T.C. 414, 425 (1969); *Howard Construction, Inc.*, 43 T.C. 343, 355 (1964); *North American Loan & Thrift Co.*

[7] See also *Rinehart Oil News Co.*, T.C. Memo. 1965–178, affirmed per curiam 369 F. 2d 692 (C.A. 5, 1966), where the contract agreement contained no allocation of the purchase price to the covenants and consequently no such allocation was made. Both parties were there aware of the covenants and their significance, yet they chose not to ascribe a price to them.

*No. 2*, 39 T.C. 318, 326 (1962), affirmed per curiam 319 F. 2d 132 (C.A. 4, 1963); *Edward A. Kenney*, 37 T.C. 1161, 1169 (1962).

In *Glenn W. Lucas, Jr.*, 58 T.C. 1022 (1972), the contract of sale for an accounting practice contained no provision for a covenant not to compete. The seller in *Lucas* was interested in withdrawing from the practice of accounting and did not desire to compete. No covenant was implied and, consequently, no value was given to it.

Here we have the situation where a selling partner seeks to withdraw from the partnership (*Glenn W. Lucas, Jr., supra*); where the contract of sale contains a covenant not to compete (*Harry A. Kinney, supra*); and where no value is assigned the covenant (*Annabelle Candy Co., supra*). In this type of factual dispute no single factor is determinative. But where, as here, tax-wise parties do not put a value on a covenant not to compete, we are hesitant about assigning a value to it absent a strong showing as to what its value might be. See *Reuben H. Donnelley Corp. v. United States*, 257 F. Supp. 747, 756–758 (S.D. N.Y. 1966), for a discussion of the difficulty a party will encounter when he seeks to have a court value a covenant not to compete not specifically valued in the agreement. See also *Balthrope v. Commissioner*, 356 F. 2d 28, 34 (C.A. 5, 1966), where the Court of Appeals said:

No one has to arrange his business affairs to satisfy the tax collector's appetite for revenues. But when a taxpayer has failed to arrange his affairs so as to minimize his taxes, he cannot expect the Court to do it for him *nunc pro tunc.* * * *

Baldarelli and Shaffer saw no need to value the covenant separately. No credible evidence was offered which would enable us to make an allocation. This, of course, does not render the covenant nugatory. In our judgment Baldarelli was buying the partnership interest of Shaffer because they were no longer compatible in their business venture. The partnership interest was independently valuable to the full extent paid.

Accordingly, we hold that Shaffer correctly reported the income he received as a long-term capital gain and that Baldarelli is not entitled to any of the claimed amortization deductions for the covenant not to compete. To reflect these conclusions,

> *Decision will be entered for the respondent in docket No. 3338–70.*
>
> *Decision will be entered for the petitioners in docket No. 3482–70.*