619 F.2d 424
 80-2 USTC P 9516
 BETTER BEVERAGES, INC., Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
S. A. STRANE and wife, Alice F. Strane, and Billy F. Strane,
individually and as independent executor of the
Estate of Adele Strane, Deceased,
Plaintiffs-Appellees.
v.
UNITED STATES of America, Defendant-Appellant.
 No. 78-2880.
 United States Court of Appeals,
Fifth Circuit.
 June 18, 1980.
 
 Robert I. White, Martin B. Whitaker, Houston, Tex., for plaintiff-appellant.
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, William A. Whitledge, Jonathan S. Cohen, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for United States of America.
 Fulbright & Jaworski, Kenneth L. Stewart, Charles W. Hall, Houston, Tex., for S. A. Strane, et al.
 Appeals from the United States District Court for the Southern District of Texas.
 Before JONES, GEE and REAVLEY, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 This appeal was born of the inconsistent treatment of a portion of the proceeds from the sale of a going business, the Dr. Pepper Bottling Co. of Victoria, Texas, by its sellers, S.A. and Billy F. Strane, and its purchaser, Better Beverages, Inc., on their respective federal income tax returns. The question presented is whether any portion of the lump sum purchase price should be characterized as payment for the sellers' covenant not to compete rather than for the transfer of the goodwill of the business[1] despite the absence from the parties' agreement of any express allocation to this or any other item.[2] Each party reported this aspect of the transaction in the manner that afforded it the least onerous tax consequences. Thus, Better Beverages, attempting to secure a substantial amortization deduction, characterized over half of the purchase price as payment for the covenant. The Stranes, on the other hand, reported the entire amount of the excess of the proceeds over their basis in the business as gain from the sale of capital assets, making no allocation at all to the covenant and, thus, implicitly ascribing all proceeds not attributable to physical assets to the transfer of goodwill or "going concern value."
 
 
 2
 In order to resolve this inconsistency and protect the revenue, the Internal Revenue Service ("IRS") asserted protective deficiencies against both parties (alternatively disagreeing with each party's characterization), and then successfully moved to consolidate their individual refund actions in the court below, realistically seeking judgment not against both, but only against one side or the other.[3] Consistent with this approach, the district court granted summary judgments against Better Beverages in favor of IRS and, congruently, against IRS in favor of the Stranes. The court rejected Better Beverages' unilateral allocation of any portion of the price to the covenant, in the absence of any evidence or allegation that both parties agreed to an allocation. Better Beverages attacks that summary judgment, arguing generally that the court strayed from proper summary judgment procedure by resolving genuine issues of material fact and assuming unsubstantiated facts in reaching its decision. Most significantly Better Beverages contends that, given the lack of an express, agreed apportionment of the purchase price among any of the components of the business, an allocation of a portion of that lump sum price to the covenant not to compete, as to any other item, may be inferred upon proof of its real economic value, and that the assertions in its affidavits of the high value it placed on the covenant were sufficient to raise a genuine question of fact on this point. We reject these contentions and affirm the judgment of the district court.
 
 Background
 
 3
 Early in 1970, representatives of Better Beverages approached the Stranes, seeking to purchase their Dr. Pepper bottling and distribution business. Their negotiations culminated in a brief "Letter of Intent," executed by both sides on February 4, 1970, reflecting their intention to effect the desired sale and purchase. Under the rough terms of this Letter of Intent, the Stranes were to transfer to Better Beverages all of the assets of their company, except real property and office equipment, for $400,000. The agreement contained no mention of a covenant not to compete and made no breakdown of the $400,000 among the various components of the business being transferred. This Letter of Intent was to bind the parties until April 1, 1970, unless the agreement were carried out earlier.
 
 
 4
 Around February 25, 1970, following some minor additional jockeying between the attorneys for both sides, the transaction was consummated, and a final Bill of Sale was executed by the Stranes. The Bill of Sale, though more formal and complete, was substantially in accord with the terms of the prior Letter of Intent. It did, however, contain three significant new provisions. First, in addition to real estate and office equipment, it excepted current accounts receivable and bank balances from the assets to be transferred to Better Beverages. Second, it included a covenant on behalf of the Stranes not to compete in the soft drink business for ten years in the surrounding trade area. Finally, the Bill of Sale made explicit the Stranes' agreement to submit their Dr. Pepper franchise for cancellation, so that Dr. Pepper might re-issue it to Better Beverages. Despite these adjustments on both sides, the lump sum cash consideration for the transfer remained at $400,000. Again, no express allocation of any portion of the purchase price was made to particular assets.
 
 
 5
 Despite the absence of a breakdown of the lump sum purchase price in any of the documents of sale, Better Beverages on its internal records apportioned $155,452.80 to the various physical assets received in the transaction, and characterized the remainder, $244,547.20, as payment for the Stranes' covenant not to compete; it attributed no amount to goodwill. R. Vol. I, p. 30. Accordingly, on each of its returns for taxable years ending June 30, 1971 and 1972, Better Beverages claimed an amortized expense of $24,454.72 in respect of the amount ascribed to the covenant. The Stranes, on the other hand, reported all income from the sale as long-term capital gain.
 
 
 6
 As noted above the district court resolved this discrepancy on July 17, 1978 when, in the consolidated refund action that followed IRS' assertion of offsetting protective deficiencies against all parties, it granted summary judgments against Better Beverages and in favor of the Stranes on the basis of the absence of a genuine issue as to the existence of the parties' mutual intent at the time of sale to allocate some portion of the purchase price to the covenant not to compete. Consequently, the ultimate question presented for our review is whether, from the affidavits and answers to interrogatories presented to the trial court, Better Beverages has demonstrated the existence of a genuine question as to any issue of material fact such as should have prevented the entry of summary judgment. Fed.R.Civ.P. 56(c); Stafford v. United States, 611 F.2d 990, 993 (5th Cir. 1980).
 
 Discussion
 
 7
 Better Beverages' overriding assertion in this regard, as stated earlier, is that it raised a genuine issue as to the key fact question in this case, the proper allocation of some portion of the contract price to the covenant not to compete, by its evidence of the high value it placed on obtaining the covenant. Better Beverages' president, Roland Campbell, and its accountant who was involved in the purchase negotiations, Tom Gray, both attested in affidavits presented to the court in opposition to summary judgment, that they had considered the covenant "essential" to the transaction and to securing the continued profitability of the purchased enterprise by protecting it from the Stranes' potentially hostile use of their many personal contacts in the market. R. Vol. I, pp. 110, 126-27. Thus, after the purchase Better Beverages had unilaterally estimated the covenant's value to it at $244,547.20, as reflected in their federal income tax returns. See R. Vol. I, p. 30.
 
 
 8
 In evaluating whether this evidence of the value of the covenant to the purchaser, Better Beverages, should have precluded summary judgment, it is helpful to recall that this is not simply a suit between a buyer and seller for the construction of a contract, but a tax refund action against the IRS, and that Better Beverages' attempt to attribute a portion of the contract price to that covenant is but a function of the more fundamental burden it must carry that of establishing its entitlement to an amortization deduction under Treas.Reg. § 1.167(a)-3 (depreciation of a fixed-life, intangible asset). Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) (burden is on taxpayer to prove entitlement to deduction). More specifically, in order to show itself to be entitled to the § 1.167(a)-3 deductions that it has claimed, Better Beverages must prove, among other things, the basis from which these amortized depreciation deductions are to be calculated.[4]
 
 
 9
 Generally, basis for depreciation purposes derives from the cost of the item to the taxpayer. I.R.C. §§ 167(g), 1011, 1012. The taxpayer must prove what, if anything, he actually was required to pay to obtain the item, not what he would have been willing to pay or even what the market value of the item was. Winn-Dixie Montgomery, Inc. v. United States, 444 F.2d 677, 683-84 (5th Cir. 1971). Consequently, evidence of value to the purchaser is material to basis, and, therefore, to this case in general, only if probative of actual cost. Applying that thesis to the question at hand, since Better Beverages seeks to prove its basis in the covenant by allocating to it a portion of the lump sum purchase price paid for the business, the evidence of value on which it relies may be said to have demonstrated a material fact issue that should have precluded summary judgment only if such evidence created a question not simply as to what would have been a fair and equitable apportionment, but as to what portion, if any, of that lump sum price Better Beverages actually was required to pay to obtain the covenant from the Stranes.[5]
 
 
 10
 In a case much like this one, the First Circuit previously has expressly rejected evidence of a buyer's unilateral assertions of value as grounds for averting summary judgment. Leslie S. Ray Insurance Agency, Inc. v. United States, 463 F.2d 210, 212 (1st Cir. 1972). After examining the nature of a bargain for a covenant not to compete, we find ourselves in accord with that decision and hold that Better Beverages' allegations as to the value of the covenant were insufficient to prevent summary judgment.
 
 
 11
 Though the First Circuit did not fully explicate its rationale in Leslie S. Ray, it appears to us that the result there, as here, was compelled by the failure of the purchaser-taxpayer's evidence and allegations to comport with its burden of proving basis, outlined above. With respect to a covenant not to compete executed incident to the sale of a going business, a purchaser's unilateral ascription of value (not alleged to have been communicated to the seller) or its assertions of the importance of the covenant to it, simply do not alone shed enough light on the value that the seller placed on the covenant and, thus, that he actually exacted from the purchaser for it to raise a question of material fact as to the issue of actual cost.
 
 
 12
 As to most physical assets and many intangibles, such as copyrights or patents, there may be a sufficient correlation between the value of the item to the buyer and its value to the seller to render evidence of the former probative of the latter, and therefore, of cost. See, e. g., Houston Chronicle Publishing Co. v. United States, 481 F.2d 1240, 1247-54 (5th Cir. 1973), cert. denied, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974) (finding potential deduction for, and allocation of portion of purchase price to, subscription lists upon proof (1) of value apart from goodwill and (2) of limited useful life). Generally, however, such assets are freely tradable and, therefore, have an ascertainable fair market value. Evidence probative of this value is, by definition, somewhat indicative of what any given seller might reasonably have expected to receive for such items and, therefore, of cost though it probably could never conclusively establish actual cost basis for the item, particularly in the context of a larger transfer of all assets in a going enterprise.
 
 
 13
 Covenants not to compete are not of this ilk, however. First, they generally are not susceptible to an abstract fair market valuation, because they are not independently traded and, thus, have little or no cognizable value apart from the context of a seller's conveyance of his business. More importantly, unlike the simple transfer of ownership in a conventional sale, the interest relinquished by the seller in executing a covenant not to compete is not parallel to that sought or received by the buyer. The value of such a covenant to a purchaser, like Better Beverages, derives from the projected degree of increased profitability and likelihood of survival of its new enterprise attributable to the insulation of that enterprise, afforded by the covenant, from the deleterious competitive force that the seller could present. Value to the seller, on the other hand, is the measure of his foregoing the opportunity to re-enter a particular market for a given period. Consequently, because they are functions of totally independent sets of considerations, the respective values of the covenant to the buyer and seller are simply unrelated. For example, while a buyer may place great significance on the covenant as a protective device, a seller, who either does not desire to re-enter the market or who is independently foreclosed from re-entry, may place virtually no value on the same covenant.[6] Accordingly, evidence and allegations of the value of a covenant to its purchaser, not communicated to the seller during negotiations or at the time of sale, simply cannot alone predict the countervailing value to the seller or answer the more fundamental question of actual cost basis.
 
 
 14
 Better Beverages, nonetheless, invites us to approach the transaction in terms of its "economic reality" and to determine an allocation for the covenant commensurate with its actual value, rather than adopting the IRS' zero basis.[7] The only "economic reality" with which this court is concerned in the instant case, however, is the price that Better Beverages bargained and paid for the covenant and upon which a depreciation deduction may properly be predicated. A taxpayer's failure of proof on this point may not be overcome by abstract arguments, not tethered to the fact of the transaction, as to what might have been a fair and equitable price or apportionment. It is not the task of this or any court to restructure a taxpayer's dealings, in lieu of his facing a prescribed burden of proof, in order to justify his entitlement to some tax benefit. "(W)hen a taxpayer has failed to arrange his affairs so as to minimize his taxes, he cannot expect the court to do it for him nunc pro tunc." Balthrope v. Commissioner, 356 F.2d 28, 34 (5th Cir. 1966).
 
 Conclusion
 
 15
 Like the holding in Leslie S. Ray, our rejection of Better Beverages' unilateral assertions of value as an inadequate indicator of actual cost basis is wholly consistent with the trend among courts, in cases like this one, to require the buyer to prove that the parties mutually intended at the time of the sale that some portion of the lump sum consideration be allocated to the seller's covenant not to compete. See, e. g., Forward Communications Corp. v. United States, 608 F.2d 485, 490-91 (Ct.Cl.1979); General Insurance Agency, Inc. v. Commissioner, 401 F.2d 324, 329 (4th Cir. 1968); Delsea Drive-In Theatres, Inc. v. Commissioner, 379 F.2d 316, 317 (3d Cir. 1967); Annabelle Candy Co. v. Commissioner, 314 F.2d 1, 7 (9th Cir. 1963) (seminal case on the question; denied allocation and deduction to purchaser despite showing that covenant had played a part in negotiation of final contract and was a valuable benefit to the purchaser); Lazisky v. Commissioner, 72 T.C. 495 (1979). 3B J. Mertens, Law of Federal Income Taxation § 22.33 at 302-03 (1973). See Harvey Radio Laboratories, Inc. v. Commissioner, 470 F.2d 118, 119-20 (1st Cir. 1972). As may be inferred from these decisions, the most efficacious method and, ordinarily, the only truly reliable and practicable way for a purchaser to satisfy his burden in a case like this one is by proof of the parties' specific agreement, expressed or implied, to allocate some portion of the lump sum purchase price to the covenant, as distinct from goodwill.[8] Better Beverages cannot travel this smooth road, however. In answer to IRS interrogatories, Better Beverages conceded not only that no agreement had ever been reached regarding allocation of some portion of the price to the covenant, but also that such a price or allocation apparently never had been discussed by the parties. R. Vol. I, p. 30.
 
 
 16
 The ultimate inquiry is not whether there existed any type of agreement, but what, if any, portion of the lump sum price actually was exchanged for the covenant, and a taxpayer could conceivably carry that burden of proof without evidence of an agreement. See, e. g., Wilson Athletic Goods Manufacturing Co. v. Commissioner, 222 F.2d 355 (7th Cir. 1955) (purchaser of shoe factory demonstrated that all of unapportioned amount allocated to goodwill and seller's covenant not to compete was paid only for covenant, since purchaser would market shoes through its own previously established channels and, thus, seller's goodwill would not pass to it). Aside from its unpersuasive reliance on its own assessments of the covenant's value, however, Better Beverages has presented no other such alternative theories.
 
 
 17
 Consequently, Better Beverages has demonstrated no error in the district court's determination that the interrogatories and affidavits before it failed to raise a dispositive fact issue as to the proper allocation to the covenant of a portion of the lump sum purchase price given for the Stranes' bottling business. Accordingly, we affirm the judgment of the district court.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Though the conveyance of goodwill was expressly provided for in this case, this court has recognized that goodwill is effectively acquired by the purchaser of a going concern in any case where, as here, the terms of the transfer enable the purchaser to "step into the shoes of the seller" with respect to continued patronage, business contacts and the like. Winn-Dixie Montgomery Inc. v. United States, 444 F.2d 677, 681 (5th Cir. 1971). See also Barran v. Commissioner, 334 F.2d 58, 61 (5th Cir. 1964)
 
 
 [2]
 The parties' divergence is predictable, given the antagonism of their interests with respect to the tax consequences of this characterization. Generally speaking, consideration genuinely paid for a covenant not to compete, apart from goodwill, forms the cost basis for a fixed-life, depreciable asset and thus yields an amortizable deduction to the buyer for the life of the covenant under Treas.Reg. § 1.167(a)-3. Lazisky v. Commissioner, 72 T.C. 495 (1979). Since such amounts are considered to be given in compensation for lost earnings, however, they constitute ordinary income to the seller. Sonnleitner v. Commissioner, 598 F.2d 464, 466 (5th Cir. 1979). Conversely, goodwill is a capital asset, and amounts given in payment therefor, in excess of the seller's basis, are taxed to the seller at more favorable capital gains rates, but represent only a nonamortizable capital investment, yielding no corresponding deduction, for the purchaser. Dixie Finance Co. v. United States, 474 F.2d 501, 506 n. 5 (5th Cir. 1973)
 
 
 [3]
 Since the tax consequences, and therefore the effects on revenue, are roughly countervailing with respect to either characterization, note 2, supra, in cases like this IRS is primarily interested in simply having the transaction reported consistently by both parties in order to avert being "whipsawed" by two alternative versions which yield the least tax revenues from each party. Throndson v. Commissioner, 457 F.2d 1022, 1024 n. 2 (9th Cir. 1972). See, e. g., General Insurance Agency, Inc. v. Commissioner, 401 F.2d 324, 326 (4th Cir. 1968) (protective deficiencies asserted against both buyer and seller; consolidated suits in Tax Court); Baldarelli v. Commissioner, 61 T.C. 44 (1973) (same). Yet, as in Baldarelli, 61 T.C. at 45, rather than continuing to play both ends against the middle, IRS ordinarily will eventually choose to side with either the buyer or seller. It has done this here, as well, essentially championing the position of the sellers, the Stranes, against that of the purchaser, while nominally reserving its rights against the Stranes should this court decide in favor of Better Beverages, the purchaser
 
 
 [4]
 Where the taxpayer fails to carry this burden to prove a cost basis in the item in question, the basis utilized by IRS, which enjoys a presumption of correctness, must be accepted even where, as here, the IRS has accorded the item a zero basis. Coloman v. Commissioner, 540 F.2d 427, 429-31 (9th Cir. 1976). See Winn-Dixie Montgomery, Inc. v. United States, 444 F.2d at 683-86. Of course, this same result must obtain, a fortiori, where the taxpayer fails even to raise a genuine issue as to actual cost basis
 
 
 [5]
 The Stranes argue that we need not even broach this question since the covenant not to compete can be shown to be unenforceable (and therefore valueless even to Better Beverages), and thus not susceptible to any allocation. They contend the covenant merely constituted an attempt to modify the parties' final agreement, embodied in the Letter of Intent, and that it was unenforceable because it was not supported by any new consideration. Stone v. Morrison & Powers, 298 S.W. 538 (Tex.Com.App.1927, holding approved); see Travelers Indemnity Co. v. Edwards, 462 S.W.2d 533, 534-35 (Tex.1970). This unenforceable covenant could not be the object of an allocation from the purchase price agreed upon before the covenant was ever conceived. See Throndson v. Commissioner, 457 F.2d at 1025-26
 Though the district court apparently relied upon this theory as an alternative basis for its decision, we cannot accept it as appropriate grounds for summary judgment. First, there is a genuine question as to whether the Letter of Intent, as opposed to the Bill of Sale, was intended to embody the final agreement of the parties. The perfunctory nature and general terms of the Letter, the fact that it was to be binding only "until April 1, 1970," and its very caption, all suggest that the Letter was more in the nature of an option than a final agreement. See Anderson v. Commissioner, 568 F.2d 386, 390 (5th Cir. 1978) (holding similar Letter of Intent not final accord under California law). The existence of this genuine issue of material fact is sufficient to preclude summary judgment on this theory. Fed.R.Civ.P. 56(c). Moreover, even if we assume the Letter to represent the parties' final agreement and the covenant to be a modification of that accord, that modification appears to be adequately supported under Texas law by the offsetting dispensation in the Bill of Sale allowing the Stranes to retain the company's current accounts receivable and cash in banks, while maintaining the overall purchase price for the remainder of the assets and covenant at $400,000.
 
 
 [6]
 In fact, in answer to IRS interrogatories, the Stranes indicated that they "were indifferent to the (formal) presence or absence of such (a non-competition) clause." R. Vol. II, p. 37. They apparently considered themselves already to have been effectively foreclosed from competing by the overall terms of the sale, which included the concession of their territorial Dr. Pepper franchise rights. Id. Though in reality they may not have been precluded from competing by use of another line of soft drinks, this would not alter the Stranes' apparent perception of their inability to compete, upon which their formulation of the low or nonexistent value, and therefore of price, of a covenant not to compete would have been based
 
 
 [7]
 Kinney v. Commissioner, 58 T.C. 1038 (1972), upon which Better Beverages relies for its economic reality argument, involved the upholding of an IRS determination of deficiency against the seller of a business, based on the Commissioner's conclusion that, despite the formal absence of any express allocation, a portion of the proceeds had in substance been given and received in consideration for a covenant not to compete and should, therefore, have been treated as ordinary income. See also David v. Phinney, 350 F.2d 371 (5th Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966). Cf. Dixie Finance Co. v. United States, 474 F.2d at 504 (IRS may look behind form of transaction to tax according to substance). Kinney is not, however, authority for the proposition that one of the parties to a transaction may unilaterally seek to have a court restructure that deal for tax purposes in accordance with abstract notions of economic fairness. Unlike this case, the Tax Court in Kinney found that both parties to the transaction had, in fact, attached considerable value to the covenant, but had been unable to agree upon a precise allocation. 58 T.C. at 1042. See also Halbert v. Commissioner, 37 T.C.M. (CCH) 408, 413-14 (1978) (IRS attempt to allocate portion of proceeds to covenant; court refused to allocate where evidence indicated no value realistically attributed to covenant by parties)
 
 
 [8]
 A party seeking to enforce an alleged extrinsic allocation agreement that would contradict the terms of the written sales contract as, for example, where the contract contains a different express allocation to the covenant (even zero) or precludes any allocation by apportioning all proceeds among other items must surmount a considerable proof barrier. See, e. g., Sonnleitner v. Commissioner, 598 F.2d at 467 (party may overcome assigned value only upon "strong proof"); Barran v. Commissioner, 334 F.2d at 63-64 (same); Commissioner v. Danielson, 378 F.2d 771, 778-79 (3d Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967) (one may contradict contract terms for tax purposes only upon such proof of fraud, duress, undue influence, and the like, as would be admissible between the parties to vary the contract substantively). Since, given the antithetical positions of the parties, the posturing of the tax consequences of a sale involving a covenant not to compete may form a significant part of the overall bargain, such deference is justified. See Davee v. United States, 444 F.2d 557, 564, 185 Ct.Cl. 184 (1971), cert. denied sub nom. Lea Associates, Inc. v. United States 425 U.S. 912, 96 S.Ct. 1507, 47 L.Ed.2d 762 (1976)
 Where, as here, however, the documents of sale contain no allocations to any components of the conveyance, the mere absence of an express allocation to the covenant not to compete, as well, does not give rise to an inference that the parties affirmatively considered the tax consequences and intended to make no allocation (or to make a zero allocation). Accordingly, one seeking to supplement such a contract by proving a collateral allocation agreement need not hurdle the obstacles of the "strong proof" or Danielson rules.