CITIZENS ASSURANCE, INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Citizens Assur., Inc. v. Commissioner
Docket No. 8751-83.
United States Tax Court
T.C. Memo 1985-260; 1985 Tax Ct. Memo LEXIS 364; 50 T.C.M. (CCH) 1; T.C.M. (RIA) 85260; June 3, 1985. Frank L. Farrar and Israel E. Krawetz, for the petitioner. Stuart D. Gibson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's 1979 Federal income taxes of $8,905.83, and an addition to tax under section 6651(a) [1] of $890.58. After concessions, the issues for decision are (1) whether one-half of the amount petitioner paid to purchase an insurance business was paid for a covenant not to compte, and (2) whether petitioner has shown that it filed its 1979 Federal corporate income tax return over one month late "due to reasonable *365 cause and not due to willful neglect." Section 6651(a). FINDINGS OF FACT Petitioner is a North Dakota corporation with its principal place of business in Enderlin, North Dakota. Petitioner filed a Federal corporate income tax return (Form 1120) for the taxable year 1979 with the Ogden Service Center in Ogden, Utah. Petitioner's principal business is the operation of the Citizens Insurance Agency (the agency) in Enderlin, North Dakota. Before 1978, the agency was owned in its entirety by Frank Farrar. Mr. Farrar also held a 93 percent interest in the Citizens State Bank (the bank). The bank operated in close association with the agency; indeed, most of the agency's business consisted of selling insurance for the houses, farms, and equipment in which the bank held security interests. Charles Feeney, who served as president of the bank since 1966, had long contemplated buying the bank and agency from Farrar. In June of 1978, Feeney purchased the bank from Farrar. Sometime thereafter, petitioner Citizens Assurance, Inc. was formed. Feeney was a shareholder *366 and officer of petitioner. On December 19, 1978, as president of petitioner, Feeney signed an agreement with Farrar for the purchase of the agency. The agreement was drafted by Robert V. Marks, an accountant, who worked both for Farrar and for Feeney, and provided in pertinent part that: Buyer wishes to purchase and Sellers wish to sell all existing insurance agency records and equipment for insurance business operated and known as Citizens Insurance Agency, for the purchase price of Two Hundred Thousand and no/100 Dollars ($200,000), payable as follows: 1. Fifty Five Thousand ($55,000.00) Dollars upon execution of this Agreement. 2. One Hundred Forty Five Thousand Dollars ($145,000.00) on January 2, 1979. * * * The agreement did not contain a covenant not to compete, and did not allocate a portion of the purchase price to any items other than those listed in the above passage. Before the purchase agreement was executed, Feeney and Farrar had discussed allocating between 50 and 100 percent of the purchase price to a covenant not to compete. When Feeney was presented with the written agreement, he noticed that it did not provide for an allocation to a covenant not to compete, *367 yet he signed the agreement without mentioning the omission. Approximately ten days after the agreement was executed, Feeney mentioned to Farrar that he had noticed that the agreement contained no allocation to a covenant not to compete. Farrar assured him that a covenant would be executed at the closing in January. The closing took place on January 19, 1979, [2] without execution of a covenant not to compete and without execution of an amendment to the agreement containing a reallocation of the purchase price. Feeney again inquired about the covenant, and Farrar assured him that he would send it to him by mail. Three days later, Farrar drafted and mailed to Feeney a document entitled Covenant Not to Compete. The document recited that Farrar agreed that for four years [3] he would not compete in the banking or insurance business within fifteen miles of Enderlin without Feeney's written permission "with the exception of Peoples and Enderlin State Bank, Enderlin, North Dakota, and Peoples and Enderlin Insurance Agency, Enderlin, North Dakota, which it is acknowledged *368 that Frank L. Farrar has a beneficial interest thereto and said covenant would not apply to his ownership in that business." [4] The covenant not to compete did not provide for a reallocation of the purchase price. Feeney never signed this document because he believed that his signature was unnecessary. In addition to his beneficial interest in Peoples and Enderlin State Bank and Insurance Agency, Farrar owned many other insurance agencies and banks in about six states. He did not believe that allocation of a portion of the sales price to a covenant not to compete would alter the tax consequences of the transaction for him, because he considered himself to be in the trade or business of buying and selling businesses. He therefore reported all income he received from the sale of his businesses as ordinary income, and not as capital gain. Enderlin is a small rural town in North Dakota. The insurance agency in 1978 was generating *369 about $170,000 in annual premiums. Two other insurance agencies were located in Enderlin, one of which was excepted expressly from the restrictions of the covenant not to compete. In the years before the agency was sold, Feeney had been more active in its operation than Farrar. Although Farrar occasionally helped, Feeney primarily solicited insurance sales and generally had more personal contact with customers. On its 1979 Federal income tax return, petitioner claimed a deduction of $20,000 for amortization of the covenant not to compete. Of the $200,000 purchase price, petitioner allocated $100,000 to the covenant, and amortized that amount over a five year period. Respondent disallowed the deduction in its entirety, claiming, among other things, that the value assigned to the covenant did not comport with economic reality. Petitioner's 1979 Federal income tax return was prepared by an accountant by the name of Bryan Jalbert, and was signed by petitioner's secretary-treasurer, Larry Tossett. Although Feeney provided Jalbert with the records necessary to prepare the return in January of 1980, the return was not filed until April 18, 1980, more than one month after March 15, *370 the date prescribed for filing in section 6072(b). Respondent determined that petitioner was liable for an addition to tax for late filing pursuant to section 6651(a). OPINION (1) Covenant Not to Compete
Feeney, as agent for petitioner, signed a document entitled "Purchase Agreement" in which petitioner agreed to pay $200,000 in exchange for "all existing insurance agency records and equipment" of Citizens Insurance Agency. He signed the document on December 19, 1978, thirty-four days before Farrar drafted a covenant not to compete. He paid the entire purchase price by January 19, 1979, three days before Farrar drafted the covenant. As ultimately written, the covenant not to compete did not recite that it was given in exchange for a portion of the lumpsum purchase price. Petitioner maintains that despite the absence of written documentation, the parties intended to allocate to the covenant not to compete one-half of the amount paid for the agency. Respondent argues that Feeney never intended to pay $100,000 for the covenant, and further asserts that no sum reasonably would have been paid for the covenant, in that its exceptions render it worthless. We agree with respondent. *371 One who contends that an allocation is contrary to that contained in a contract must present strong proof of the parties' intent and of the economic realities in order to prevail. Major v. Commissioner,76 T.C. 239, 247 (1981). On the other hand, one who seeks to construe an ambiguous term in a contract need prove his construction by a mere preponderance of the evidence. Smith v. Commissioner,82 T.C. 705, 714 (1984); Peterson Machine Tool, Inc. v. Commissioner,79 T.C. 72, 82 (1982), affd.     F.2d     (10th Cir. 1984, 84-2 USTC par. 9885, 54 AFTR 2d 84-5408). The written contract in this case is unambiguous; it allocates the entire purchase price to records and equipment. The strong proof standard consequently applies here. Feeney earnestly testified that the seller agreed "to allow me a 50 percent." A conversation of this nature may indeed have taken place; this Court has stated, however, that "we are not bound by the parties' labels, but only by the facts." Smith v. Commissioner,supra at 716. In the instant case non-adverse parties casually attached an unrealistic label to a transaction *372 well after the transaction had been executed. Their conduct can hardly be deemed to constitute strong proof that one-half of the purchase price was paid for the covenant not to compete. We find it incredible that a bank president would knowingly sign an agreement that contained a material omission, especially if the item omitted actually represented one half of the purchase price. [4] We likewise greet with scepticism Feeney's explanation that he paid the balance due ($145,000) on the closing date again without obtaining Farrar's written promise not to compete because he "trusted" Farrar. Indifference, rather than trust, appears to have been the motivating factor. Indeed, if Feeney had considered the covenant at all important, he undoubtedly would have protested when Farrar finally produced a four-year covenant in lieu of the promised five-year covenant. We have been presented with no evidence that Feeney even noticed the disparity. We believe, in any event, that the economic value of the *373 covenant justified Feeney's indifference. Only two other insurance agencies were located in Enderlin when the covenant was signed, and one of those agencies was excepted from the terms of the covenant. The insurance business sold was not one in which personal contact with customers was a significant factor; indeed, most of the insurance was purchased to protect the bank's security interests in its collateral. Thus, a reallocation of one-half of the purchase price to the agreement not to compete would not be consistent with economic reality. "The ultimate inquiry is not whether there existed any type of agreement, but what, if any, portion of the lump sum price actually was exchanged for the covenant." Better Beverages,Inc., v. United States,619 F.2d 424, 431 (5th Cir. 1980). In the instant case petitioner has not presented strong proof that the covenant was made in exchange for any portion of the purchase price. (2) Untimely Filing
Petitioner filed its 1979 Federal income tax return on April 18, 1980, more than one month after its due date of March 15. Section 6072(b). Section 6651(a) provides that an addition to tax shall be imposed for failure *374 to file a return on the date prescribed, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Reasonable cause exists when the taxpayer establishes that he exercised "ordinary business care and prudence." Paula Construction Co. v. Commissioner,58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). The burden of proof lies with the petitioner. Neubecker v. Commissioner,65 T.C. 577, 586 (1975); Rule 142(a), Tax Court rules of Practice and Procedure.
In the instant case, petitioner has shown that although the accountant who prepared the corporate return received all information necessary to prepare it in January, he did not timely prepare the return due to personal problems. This Court has stated that: A taxpayer who has failed to file a timely return may demonstrate reasonable cause by showing that he acted in good-faith reliance upon the advice of an accountant to whom full disclosure of the relevant facts were made. * * * However, the application of this principles is limited to situations where the taxpayer does not know whether certain tax returns *375 are required, and therefore must rely on its accountant to resolve a complex question. * * * Where the taxpayer is aware that a return is required, but delegates the responsibility of preparing it to a third person, the delegate's subsequent failure does not, alone, constitute reasonable cause. * * * [Paula Construction Co. v. Commissioner,supra at 1061.] Petitioner has argued only that the late filing was due to the accountant's inadvertance, and not that petitioner did not know whether returns were required. In fact, Feeney testified on cross examination that he knew the return was due on the 15th of March. The addition to tax for late filing therefore must be upheld. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. Financial problems prevented the closing from taking place on January 2, as provided in the purchase agreement.↩
3. The parties previously had agreed that the covenant would be in effect for five years. Indeed, Feeney testified that although he was aware that the covenant was missing when he signed the contract in December, he did not even raise the issue of the omission for 10 days.
[4]↩ The "beneficial interest" consisted of an option to purchase 50 percent of the stock of a holding company that owned both the bank and the insurance company.