**BARNES GROUP INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 780, Docket 88–6255.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 9, 1989.

Decided April 5, 1989.

---

John C. Yavis, Jr., Hartford, Conn. (Peter G. Gillin, Everett E. Newton, John E. Besser, Murtha, Cullina, Richter & Pinney, Hartford, Conn., on the brief), for plaintiff-appellant.

Charles Bricken, Atty., Tax Div., Dept. of Justice, Washington, D.C. (William S. Rose, Jr., Asst. Atty. Gen., Washington, D.C., Stanley A. Twardy, Jr., U.S. Atty. for the D. Connecticut, New Haven, Conn., Gary R. Allen, Robert S. Pomerance, Attys., Tax Div., Dept. of Justice, Washington, D.C., on the brief), for defendant-appellee.

Before FEINBERG, KEARSE, and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Barnes Group Inc. ("Barnes") appeals from a final judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge*, dismissing its complaint seeking a refund of corporate income taxes paid for its 1978 and 1979 tax years. The district court granted a motion by defendant United States to exclude from evidence certain contracts on which Barnes intended to rely at trial, and subsequently granted summary judgment in favor of the government. On appeal, Barnes contends that the court committed procedural error in excluding its contract evidence and committed various substantive errors in reaching the conclusion that Barnes was not entitled to a refund. For the reasons below, we conclude that the court should have permitted the submission of the contract evidence and we vacate the judgment and remand for further proceedings.

## BACKGROUND

During 1978 and 1979, Barnes, a manufacturer of precision springs and distributor of various repair parts, acquired the stock of three closely held distributors of various automotive parts. Each of the acquired companies depended for its success on certain key employees who had close personal contacts with a small group of customers. As a condition of the acquisitions, Barnes required that each about-to-be-acquired company execute employment contracts with its key employees, obligating the employees (a) to work for specified periods after the company was acquired by Barnes, and (b) not to compete during that period plus an additional two years (the "key contracts"). According to Barnes, the key contracts were executed several months before the acquisitions were consummated.

When Barnes acquired the stock of the three companies, the key employees became employees of Barnes, and Barnes liquidated the companies in accordance with 26 U.S.C. §§ 332 and 334(b)(2) (1976), thereby receiving all of the acquired companies' assets. On its 1978 and 1979 income tax returns, Barnes claimed deductions for amortization attributable to the key contracts on the theory that they were amortizable assets received in liquidation. The Internal Revenue Service ("IRS"), however, disallowed, *inter alia,* the claimed deductions for the key contracts, treating the contracts as part of goodwill. Barnes paid the deficiencies assessed against it and brought the present suit for a refund.

A jury trial on Barnes's claims was scheduled to commence on April 12, 1988. On April 11, the government filed a motion *in limine* seeking to exclude evidence relating to the value of the key contracts. The district court heard argument on the motion on April 12. The government argued in part that no deduction was allowable with respect to these contracts because they were not in fact assets of the acquired companies, stating that the "agreements specifically stated in them that they would come into effect only if Barnes bought that corporation"; thus, it argued, each "agreement was not even in existence at the time [Barnes] acquired these corporations...." The government's motion was not accompanied by copies of the key contracts or by any affidavits quoting those contracts.

Barnes's counsel, noting that the government's motion had been served only the day before, argued that the key contracts had been entered into, albeit at Barnes's insistence, several months prior to Barnes's acquisition of the stock and hence were assets of the acquired companies before Barnes acquired them. The court apparently rejected the suggestion that the key contracts predated the acquisitions, and it refused to receive copies of the contracts:

THE COURT: ... So, when they [*i.e.,* Barnes] acquired the business, and including whatever contractual or rights like they had to continue employment of these fellows, they did not acquire the right to stop them from competing; is that right?

MR. YAVIS [Barnes's counsel]: That is not right.

THE COURT: Oh, they were obligated not to compete before Barnes bought them?

MR. YAVIS: Yes.

THE COURT: But not by contract?

MR. YAVIS: Well, your Honor, I can show you the contract. I have a copy of it here.

THE COURT: Wait a minute. I don't want to get confused by a contractual obligation not to compete, and a relational principal and agent agreement not to compete, and a good faith implicit obligation owed by a shareholder who is being paid by its own corporation.

(Transcript of Hearing April 12, 1988, at 13.)

The court noted that after the acquisitions, Barnes itself had employment contracts with the key employees and that it deducted the amounts paid to those employees as salary for services performed and for their noncompetition. It concluded that Barnes's attempt to deduct the amortized value of the key contracts constituted an attempt to gain two deductions for the same expense, and it stated, "You're not going to get it both as a salary payment or an expense, and then in addition as a depreciation of an asset." (*Id.* at 22.)

Accordingly, the court granted the government's motion to exclude Barnes's evidence relating to the key contracts, stating as follows:

I am going to grant this motion in limine to exclude any evidence of amounts paid to purchase an agreement not to compete. First, in the first place you paid it already, and I mean in the first place it was not really anything you bought. You just manufactured it in order to have something. Assuming that it was bargained for and at arms length, I'm not going to allow this corporation to deduct it twice. Now, if my understanding of the fact is correct, that is the ruling.

If there is a dispute about the facts as distinguished from a dispute or difference of opinion as to what the tax consequences are, that is another thing, and you will be able to go up to Second Circuit on that.... So that is where we stand. You are out of Court as far as I'm concerned.

As far as this case is concerned, we are not going to listen to evidence as to how much that extra amount for what you claim was paid for an agreement not to compete was worth. There is no sense in going into it at all, because you can't deduct it twice.

(*Id.* at 21–22.) In light of this ruling, the court dismissed the jury.

The parties thereafter submitted cross-motions for summary judgment, and in an opinion reported at 697 F.Supp. 591 (1988), the court rejected all of Barnes's claims. Noting that it had granted "the government's motion *in limine* as one for partial summary judgment on th[e] crucial issue" of the appropriate tax treatment of the key contracts, *id.* at 593, the court found that

[i]n each case these agreements ... were specifically conditioned upon the sale of the company to Barnes, and in the event that no such sale took place the agreements were to have no effect.

. . . .

According to the unconditional representations of the plaintiff's counsel all of the employment contracts in question were explicitly conditioned upon the sale of the employer-company to Barnes. These employees were not bound by any contracts of employment with their former employer prior to the sale of each company to Barnes. Thus, in the event no sale had taken place the employees who signed contracts would have been free to resign from employment and to compete with their former employer. These documents were without legal effect until the moment Barnes purchased the stock of the employer-company. Since Barnes concedes that liquidation of the acquired companies immediately followed acquisition, the contracts cannot

be said to have ever truly existed as assets of the acquired companies.

*Id.* at 593–94; *see also id.* at 597 ("in fact the contracts had no legal effect until the moment when the acquired companies ceased legal existence").

Judgment was entered dismissing Barnes's complaint, and this appeal followed.

## DISCUSSION

■ On appeal, Barnes contends principally that the district court erred in (1) its refusal to permit Barnes to submit the key contracts to the court, (2) its interpretation of those contracts, (3) its view that Barnes sought a double deduction for the same expenditure, and (4) its conclusions as to the valuation methods Barnes was required to use for tax purposes. We conclude that the court erred in excluding the key contracts from the record and, in light of their exclusion, in making any findings as to the content and meaning of those contracts. We do not reach the other questions.

The government's motion to exclude Barnes's evidence relating to the key contracts plainly depended on the contents and purposes of those contracts. In support of its contention that the key contracts did not preexist the acquisitions and hence could not have been assets of the acquired companies, the government stated that the "agreements specifically stated in them that they would come into effect only if Barnes bought that corporation." This representation, which was not supported by the introduction of, or any quotation from, the contracts themselves, was disputed by Barnes's attorney. He stated that the contracts had been entered into months prior to the acquisitions, and he offered one such contract to the court for examination. The contracts themselves plainly were material to a resolution of the dispute as to what they provided.

The court refused to allow Barnes to submit the contracts but nonetheless proceeded to make findings as to their contents. It found, *inter alia,* that they were "specifically conditioned upon the sale of the company to Barnes," and that "in the

event no sale had taken place the employees who signed contracts would have been free to resign from employment and to compete with their former employer." Since the district court refused to allow Barnes to submit the key contracts to the court, the correctness of its interpretations cannot be determined on this appeal.

We note that in its opinion on the cross-motions for summary judgment, the court apparently attributed these interpretations of the contracts to "the unconditional representations of the plaintiff's counsel." Barnes, in its brief on this appeal, states unequivocally that "[t]here was no such representation." Our review of the record does not disclose such a representation, and the brief submitted by the government on this appeal does not suggest that there was one. Indeed, the government's brief on appeal notes that it was "the affirmative representation by *government* counsel[ ] on which the court's understanding was based." (Emphasis added.)

We conclude that it was error for the district court to refuse to receive the contracts at least in order to rule on the *in limine* motion, and it was error for the court to interpret the contracts without seeing them or having clear or undisputed evidence before it as to their contents. Accordingly, we remand to the district court for further proceedings in which the contracts themselves should be received.

■ In the proceedings on remand, the court will be required to consider first the questions of when the key contracts were entered into and whether they were conditional upon the sale of the companies. If the court determines that the contracts were entered into prior to, and were not conditional upon, the acquisitions, the court will also be required to consider the purposes for which those contracts were entered into, for the substance of a transaction is relevant to its tax treatment. *See, e.g., Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945) ("incidence of taxation depends upon the substance of a transaction"). While the buyer of a company is of course free to obtain employment contracts

and covenants not to compete directly from the employees of the purchased company, *see, e.g., Better Beverages, Inc. v. United States,* 619 F.2d 424, 426–27 (5th Cir.1980), we see no reason why the acquiring company should receive a tax benefit from having such contracts executed instead by the to-be-acquired company if the latter had no substantial business purpose for so doing independent of the proposed sale of the company, and the sole purpose of that act was to increase the acquiring company's tax benefits in connection with the purchase and impending liquidation of the company.

Finally, we note that the court treated the government's *in limine* motion as one for partial summary judgment. *See* 697 F.Supp. at 593. Although we agree that the motion was in effect one for partial summary judgment, it was not a proper motion. Fed.R.Civ.P. 56(c) requires that a summary judgment motion be made on at least 10 days' notice. The purpose of this requirement is to give the opposing party an adequate opportunity to submit affidavits or other materials in an effort to show that there exists a genuine issue of material fact to be tried. *See, e.g., Gutwein v. Roche Laboratories,* 739 F.2d 93, 95–96 (2d Cir.1984). The government's motion, however, was made on one day's notice and was granted the next day. Had the proper notice been given, Barnes would at least have had a reasonable opportunity to respond to the motion with a written presentation, which likely would have included copies of the pertinent provisions of the key contracts. The record before the district court would then perhaps have been adequate to permit that court to make findings as to the content and meaning of those contracts and to permit this Court to review the findings in light of an appropriate record.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings.