**WILSON ATHLETIC GOODS MFG. CO., Inc., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11385.

United States Court of Appeals Seventh Circuit.

May 17, 1955.

Louis R. Simpson, Howard C. Parson, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Karl Schmeidler, Atty., Department of Justice, Washington, D. C., Ellis N. Slack, Lee A. Jackson, Joseph F. Goetten, Sp. Assts. to the Atty. Gen., for respondent.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioner seeks to reverse a decision of the Tax Court approving deficiencies in its income taxes for the years 1947, 1948 and 1949. It has been extensively engaged in the manufacture and sale of athletic goods for many years, having some 15 factories located in 10 different cities, wherein it produces sports equipment, such as golf clubs and balls, baseball mitts, footballs and athletic clothing of all types. These products it markets through its wholly owned subsidiary, Wilson Sporting Goods Company, which has branches in various parts of the United States. Previous to 1947, petitioner had sold athletic shoes under the "Wilson" label. However, it did not manufacture such shoes, but purchased them from other companies, one of which was the Wisconsin Shoe Company, of Milwaukee, a co-partnership, consisting

of Chester J. Krauthoeffer and Emory W. Krauthoeffer. In June, 1947, the partners and petitioner entered into negotiations looking to the sale of the Wisconsin enterprise to the taxpayer, which, in October, culminated in an agreement whereby the Wisconsin Shoe Company was sold to petitioner. The total purchase price aggregated $570,000, which included $270,000 for current assets, $157,307.70 for machinery, equipment, molds, lasts, patterns and dies and an additional $142,692.30, with which alone we are concerned on this appeal. At the time of the purchase the taxpayer entered upon its books allocation of the latter expenditure as follows: "Covenant Not to Compete $132,692.30; Good Will $10,000." We are specially concerned with the item of $132,692.30 entered on petitioner's books as the purchase price of the covenant not to compete. The taxpayer, during the years in question, took depreciation on this item as a deduction, attributing to it a life of ten years. The Commissioner refused to allow the deductions, assessing the deficiencies, which the Tax Court approved.

■ In this respect the Tax Court believed that the sum now in controversy was a part of $300,000 paid for the going business, including the tangible and intangible assets. It found that the value of the covenant not to compete could not be segregated from the gross sum of $300,000 and that any excess over the value of the fixed assets included therein should be treated as the value of the good will of the Wisconsin company as a going concern. Of course, its finding to this effect, if supported by substantial evidence upon the record as a whole, cannot be disturbed upon appeal unless clearly erroneous, that is, unless on the whole record the court is left with a definite and firm conviction that a mistake has been made. U. S. v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. It has become necessary, therefore, to examine the record to determine whether there is evidence to sustain the finding.

Each of the two partners of the Wisconsin company covenanted in the contract of sale "that for a period of ten (10) years from the effective date of this agreement, he will not engage in or be employed by any business in competition with Wilson with respect to the manufacture, distribution, or sale of athletic shoes any where within five hundred (500) miles from the City of Milwaukee." To support its contention that the $132,692.30 represented the fair value of the covenants, petitioner presented the undisputed testimony of its president, Bowman, who first explained that the taxpayer was in the peculiar position of manufacturing all the lines of athletic equipment it was selling, with the exception of athletic shoes. He then explained that, in order to round out its distribution and to retain proper control over the quality of the product, the company felt that it should operate its own athletic shoe factory. He testified that it had done business with the Wisconsin company for over 35 years; that the latter's product was satisfactory; that the shoes it purchased from that company it sold, not under the trademark of Wisconsin but under its own; that, in this situation, the company finally decided to purchase the Wisconsin Shoe Company; that it insisted upon having included in the contract of purchase the covenant not to compete quoted above; that petitioner would not have considered purchasing the Wisconsin business without such a covenant and would not have been willing to pay Wisconsin the price it finally did pay unless the covenant was included. This covenant, said the witness, was the thing of value to the petitioner.

The witness said further that his company was not interested in purchasing the good will of Wisconsin; that it had its own distribution means and methods, its own customers' lists, and its own brand names; that the Wisconsin company had no good will to which he could ascribe any value to the taxpayer, but that it did have the factory and the machinery which petitioner desired, and which it could use, provided it had a

covenant on the part of the owners not to compete. He testified that petitioner did not acquire the Wisconsin establishment in order to obtain customers, as it already had more than it could supply; that it was not interested in Wisconsin's customers; that, even after purchasing the assets, the taxpayer was unable to supply all its demands from its own production; that the $157,000 as the value of the fixed assets was arrived at by an appraisal made by engineers; that although the taxpayer's accounting department had allocated the sum of $10,000 for good will, he was of the opinion that no value should be attributed to that item, and that the covenant not to compete should have been valued at the entire $142,000 rather than $132,000 which the accounting department allocated to it. He emphasized that assurance of non-competition was the important element of the entire transaction.

The Commissioner offered no evidence controverting the truth of this testimony. One of the partners of the Wisconsin company testified, when called as a witness by respondent, that he and his brother were of the respective ages of 59 and 62; that they did not seriously plan on retiring; that they were still of an age when retirement "perhaps would not be considered."

From the uncontroverted evidence, then, it appears that the $132,000, so far as the petitioner was concerned, represented the cost of the covenant not to compete. No finding to the contrary is supported by the evidence. The tax court seemed to think that, in order to justify treating the covenant as an intangible capital asset, the contract must have provided an express segregation of the $132,000 from the total purchase price as the value of the covenant. But in tax matters we are not bound by the strict terms of the agreement; we must examine the circumstances to determine the actualities and may sustain or disregard the effect of a written provision or of an omission of a provision, if to do so best serves the purposes of the tax statute. Higgins v. Smith, 308 U.S. 473 at page 477, 60 S.Ct. 355, 84 L.Ed. 406. The incidence of taxation depends upon the substance of the transaction. Tax consequences are not to be finally determined solely by the mechanical means employed to transfer legal title. We must look to the realities. Hamlin's Trust v. Commissioner, 10 Cir., 209 F.2d 761, at page 764; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Jones v. Grinnell, 10 Cir., 179 F.2d 873. Therefore, it was the duty of the tax court and is our duty here to ascertain the true intent, insofar as tax consequences are concerned. Consequently, it is immaterial whether the contract did or did not define a specified amount as the value of the covenant. Indeed, on argument, counsel agreed that a provision in the contract fixing the value would not necessarily have had a binding effect on the proper determination of tax liabilities. In view of the silence of the contract in this respect, it became necessary to determine then from the other evidence whether the covenant had a value, and if so the amount thereof. Where realistically and actually the covenant has a discernible value, the purchaser, of course, may amortize the price paid for it and claim annual deductions pro rata during the life of the covenant. Commissioner of Internal Revenue v. Gazette Tel. Co., 10 Cir., 209 F.2d 926, at page 928. We conclude that the record justifies only a finding that the value of the covenant not to compete was the sum of $132,692.30, and that the tax court erred in not so finding.

For the reasons stated the decision of the Tax Court is reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.