Morris MOSCOWITZ and Marilyn Moscowitz, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 69C 38(1).

United States District Court, Defendant. E. D. Missouri, E. D. June 22, 1970.

Robert Mass, Mellitz, Mass, Agatstein & Frank, Clayton, Mo., Burton A. Schwalb and John M. Bray, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for plaintiffs.

Michael C. Durney, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

HARPER, Chief Judge.

This matter is presently before the court on plaintiffs' motion for summary judgment, with the supporting affidavit

of plaintiff, Morris Moscowitz, and depositions, pursuant to Rule 56 of the Federal Rules of Civil Procedure. This action is brought by the plaintiffs for recovery of an alleged overpayment of federal income taxes for the year 1964 in the amount of $397,206.45, plus interest from the date of payment.

Plaintiffs filed a joint return for 1964 and paid the taxes shown to be due thereon. Defendant assessed additional income tax against them, which plaintiffs paid on May 29, 1968. Pursuant to 26 U.S.C.A. § 6511(a), plaintiffs filed a claim for refund. After the expiration of six months, this suit was instituted. Jurisdiction is established under 28 U.S.C.A. § 1346(a) (1).

The affidavit of Morris Moscowitz and the depositions of other individuals involved in the negotiations establish the following facts for purposes of this motion: On December 16, 1963, plaintiffs, Morris and Marilyn Moscowitz, executed a contract with National Linen Service Corporation (now National Service Industries, Inc., and hereinafter referred to as National), whereby the plaintiffs agreed to sell both tangible and intangible assets of a linen supply business and a laundry business to National. The agreement provided for a lump sum purchase price of $2,350,000.00 (plus $50,-000.00 for certain vehicles), payable $600,000.00 in 1964, and the balance in installments over a period of seven years. The agreement also provided for a covenant on the part of plaintiffs not to compete with National within a certain area for ten years. Closing of the agreement was held on January 17, 1964, and a separate Restrictive Covenant was signed by the plaintiffs on the same day. The contract did not allocate any specific amount of the lump sum purchase price to the covenant not to compete (or to any of the underlying assets). However, the contract does include the covenant as one of the listed items for which the purchase price was paid.

Thereafter, National allocated $800,-000.00 of the purchase price to the cove-

nant for purposes of deducting that amount by amortizing it ratably over ten years, the life of the covenant. (National's claimed allocation and resultant deductions are the subject of a pending refund suit by National in Atlanta, Georgia.) As a result of the allocation by National, the Internal Revenue Service treated $800,000.00 of the lump sum purchase price as being allocable to the covenant for plaintiffs' income tax purposes, and taxable as ordinary income instead of capital gains. Ullman v. Commissioner of Internal Revenue, 264 F.2d 305 (2nd Cir. 1959). The Internal Revenue Service also treated the entire $800,000.00 as having been received by plaintiffs in 1964, and assessed additional income taxes accordingly.

Plaintiffs contend that as a matter of law no amount of a lump sum purchase price can be judicially allocated to a covenant not to compete where the contract itself makes no such allocation, and where the parties to the contract did not agree on such an allocation.

Defendant contends that whether or not the parties to the contract agreed to a specified dollar allocation to the covenant is immaterial in view of the written language of the contract of sale wherein it is stated that the covenant not to compete is one of the assets for which the purchase price was paid. Thus, defendant argues, the plaintiffs have agreed that *some* portion of the purchase price was paid for the covenant not to compete, and there exists a genuine issue of material fact as to how much of the $2,350,000.00 is attributable to the covenant. In such a case, summary judgment is inappropriate.

The question presented in this case has been considered many times in varying contexts in other jurisdictions. No single test or approach has been accepted universally and the case law cannot be entirely reconciled. Neither this court nor the Eighth Circuit Court of Appeals has ruled on the precise issue involved here.

928

 Generally, in the field of taxation, the substance of a transaction as revealed by the evidence as a whole controls over the form employed. See, e. g., Haag v. Commissioner of Internal Revenue, 334 F.2d 351 (8th Cir. 1964). In all approaches and test, due consideration is given the contract. However, the circumstances antedating and surrounding the execution of the contract are significant. The Eighth Circuit Court of Appeals, in an analogous case (Coca-Cola Company v. Commissioner of Internal Revenue, 369 F.2d 913, 917–918 [1966]), has recognized the general rule allowing a court to look behind the written agreement for the purpose of determining whether it reflected the substance of the transaction, and stated: "Certainly, the courts are at liberty to pierce the form of a particular transaction to arrive at the just tax liability."

 Therefore, in the present case the defendant cannot rely on the form of the contract alone to establish that *some* allocation was made to the covenant. Nor can the plaintiffs rely on the form of the contract alone to establish that the parties did not agree to a specific allocation or that the parties agreed not to allocate at all. It is necessary to consider the circumstances with respect to the covenant not to compete which preceded the execution of the contract.

Plaintiffs' affidavit in support and the record show that the total purchase price of $2,400,000.00 was agreed to prior to November 14, 1963. On November 14, 1963, at a meeting of the negotiating parties, National suggested the covenant not to compete for the first time. Morris Moscowitz agreed to such a covenant, stating that he intended to get out of the business for good. National suggested allocating $400,000.00 over ten years to the covenant. Plaintiffs rejected the suggestion and rejected allocating any amount to the covenant.

In a memorandum of that meeting dated November 15, 1963, used for the internal purposes of National only, the following statement with respect to the covenant appears: "Mr. Moscowitz is to give an individual restrictive covenant. There was some question as to the recitals of consideration, and that is to be worked out among the attorneys * * *." An additional memo referencing "Allocation to Restrictive Covenant", written for National's internal use also, and dated November 18, 1963, contains the following: " * * * Both parties were well aware of the tax consequences of allocating a specific amount to a restrictive covenant. As a result, the parties have agreed to a lump sum acquisition. National Linen would not think of buying the business without a restrictive covenant * * *."

Thus, it is clear that plaintiffs did not intend to allocate a portion of the purchase price to the covenant, and it is equally clear that National did intend to make such an allocation. It is also clear that National considered the covenant not to compete to be essential to the transaction, and that plaintiffs considered it to be of little or no value. The parties to the contract were advised by attorneys throughout the negotiations and execution of the contract and were well aware of the tax consequences.

In their brief, plaintiffs have categorized the approaches employed by the courts in dealing with this issue. It is unnecessary to detail the various approaches, but in each case it is apparent that the circumstances of the making of the agreement are important. In Commissioner of Internal Revenue v. Danielson, 378 F.2d 771 (3rd Cir. 1967), cert. den. 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed. 2d 123 (1967), the court held that an agreement containing an allocation was binding on the parties unless there existed the kind of mistake, undue influence, fraud, duress, etc., which would alter or invalidate the contract. The appellate courts, generally, although no Eighth Circuit case has been found, have used an approach wherein the contract as executed is determinative unless

it can be shown by "strong proof" that the parties intended an allocation other than the one provided in the contract. See, Balthrope v. Commissioner of Internal Revenue, 356 F.2d 28 (5th Cir. 1966); Ullman v. Commissioner of Internal Revenue, supra. In Annabelle Candy Co. v. Commissioner of Internal Revenue, 314 F.2d 1 (9th Cir. 1962), the court looked to the intention of the parties as to allocation, and finding no expressed intention, refused to make an allocation to the covenant.

The state of the record in this case discloses a dispute as to the value of the covenant and a dispute as to the intention of the parties with respect to allocation. In view of the contract which provides that the purchase price was in payment for, in part, the covenant not to compete, although no specific allocation is made, and in view of the necessity of determining the intention of the parties at the time the agreement was made, summary judgment is inappropriate. The facts do not show that the parties agreed not to allocate any amount to the covenant, nor do the facts show that the parties did intend to make an allocation, albeit unspecified, to the covenant. Plaintiffs and National expressed contrary intentions as to the allocation during the negotiations. It is a matter of fact to be determined what the intention of the parties was at the time they entered into the contract.

It is hereby ordered that plaintiffs' motion for summary judgment be and the same is denied.

This order, in the opinion of the court, involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, and it is, therefore, further ordered that the plaintiffs herein may make application for appeal under the provisions of 28 U.S.C.A. § 1292(b), and if appeal is permitted, the proceedings herein are stayed until further order.