George L. THEOPHELIS and Arlene Theophelis, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 81–73473.

United States District Court, E.D. Michigan, S.D.

Sept. 30, 1983.

Mark A. Goldsmith, Troy, Mich., for plaintiffs.

Ronald F. Fischer, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiffs brought this action under 28 U.S.C. § 1346(a)(1) for a refund of federal income taxes, claiming that the Internal Revenue Service ("IRS") incorrectly disallowed a deduction for the cost of a covenant not to compete. The matter is before the Court on the defendant's motion for summary judgment. The parties have briefed the issues and presented oral argument to the Court. For the following reasons, defendant's motion is hereby granted.

All material facts are undisputed. On November 28, 1975, plaintiffs executed an

agreement to purchase a retail party store from Matthew A. Lumetta. Under the agreement, plaintiffs purchased:

> the lease to the premises, the keys and all other indicia of possession, the goodwill of the business as a going concern, the Seller's interest in the liquor licenses, stock-in-trade, furniture, fixtures, equipment, transferable insurance policies, all contracts which have been made by or granted to the Seller in connection with the business, and all other property (except cash and accounts receivable) owned and used by the Seller in the business.

Agreement of Sale at ¶ 1. Under ¶ 2, the purchase price for "all of the assets referred to in Paragraph 1, other than the stock-in-trade" was set at $145,000. The purchase price for the stock-in-trade was set forth separately in ¶ 3. Under ¶¶ 17 and 18 of the agreement, Lumetta agreed that for a period of two years after the date of closing, he would neither engage in any similar business within a ten-mile radius of the party store nor solicit any sales from the industrial accounts on a list which was to be furnished to plaintiffs.

Aside from the separate purchase price for the stock-in-trade which was set forth in ¶ 3 of the agreement, the parties did not allocate the purchase price among the other items included in ¶ 1. Nor did they allocate any part of the purchase price to Lumetta's covenant not to compete with plaintiffs in their new business. Indeed, the parties never discussed this subject until their final meeting during which they executed the agreement. They agreed at that time that they would *not* allocate any specific part of the purchase price to the covenant, but rather that they would allow the IRS to determine its value.[1]

In their 1976 federal income tax return, plaintiffs claimed that the property constituting the party store had a value of $100,000.00, and they claimed an investment credit of $10,000.00. The IRS audited this return and determined that the property's value was only $45,000.00. In their 1979 federal income tax return, plaintiffs then claimed for the first time that they had paid $75,000.00 for Lumetta's covenant not to compete. They sought to amortize the cost of the covenant over its two-year span, pursuant to 26 U.S.C. § 167. The IRS disallowed their claim, and this lawsuit ensued.

Plaintiffs argue that there is a factual dispute as to whether the parties to the Agreement of Sale intended to allocate part of the purchase price to Lumetta's covenant, and that summary judgment must, therefore, be denied. The Court finds that the parties undisputedly agreed *not* to allocate any specific part of the purchase price to the covenant.[2] There are two independent bases for this conclusion. First, the

---

1. Plaintiff George L. Theophelis testified at his deposition as follows:

> Q. Did there come a point in time where a value was given to the covenant not to compete?
> A. No, what we determined at the final meeting, and Mr. Grosberg brought this up, he said that we weren't going to get involved in any fighting over the covenant. The—what do you call it?
> Mr. Gordon: Good will.
> A. Good will and property. The first person audited would take what was to be determined, and the attorneys and everybody said, "hallelujah". They agreed right there on the spot.
> Deposition at 36.

> Moreover, he stated in his affidavit:
> 6. At one of the meetings between Mr. Lumetta, me and our representatives, we dis-

cussed the issue of allocating a portion of the purchase price to the covenant not to compete.
> 7. At this meeting, Herbert Grosberg, my accountant, suggested that the parties avoid a protracted dispute over the exact amount to be allocated to the covenant. Instead he proposed that the results of the audit of the first party to be audited would be binding on the other parties. To this we all agreed and therefore did not specifically allocate any specific amount to the covenant not to compete.

2. Plaintiffs contend that the parties agreed to "some allocation" of value to the covenant. There is no support for this assertion in the record before the Court; plaintiff's own deposition and affidavit indicate that no such agreement was reached.

Agreement of Sale provided that the purchase price of $145,000.00 was for all of the assets listed in ¶ 1 except for the stock-intrade. The covenant not to compete was not listed among the assets in ¶ 1; it was set forth separately in ¶¶ 17 and 18. It would be included among the assets in ¶ 1 only if considered to be one of the "contracts which have been made by or granted to the Seller in connection with the business." This would be a highly illogical construction, however; it would imply that among the assets conveyed pursuant to the Agreement of Sale was the Agreement of Sale itself.

Nevertheless, assuming *arguendo* that the covenant was one of the assets included in ¶ 1, the parties did not allocate any specific part of the purchase price to the covenant. As noted, the parties did not even discuss this subject until the date on which the agreement was executed. They agreed at that time not to allocate any part of the purchase price to *any* of the assets purchased, apparently because they did not want to delay the execution of the agreement.

Other evidence before the Court corroborates the conclusion that plaintiffs never attempted to allocate a specific value to the covenant until long after the parties had negotiated their agreement. Plaintiff George L. Theophelis noted in his deposition that even after a dispute had arisen concerning the value of the party store personal property, he did not discuss with his accountant the allocation of any specific value to the covenant. *Id.* at 39. Moreover, as noted above, plaintiffs did not claim that the covenant had any specific value until nearly four years after they had purchased the party store.

Faced with a similar factual situation, the court in *Markham & Brown, Inc. v. United States,* 648 F.2d 1043 (5th Cir.1981) held that the taxpayer's deduction was properly disallowed. The taxpayer in that case was a closely held corporation; the other parties involved in the transactions at issue were its three stockholders. In 1966, the three stockholders executed a buy-sell agreement. The agreement provided that any of the stockholders could sell his stock to the corporation upon demand. It also provided upon such a sale, the exstockholder would not compete with the corporation's business for five years.

One of the stockholders sold his stock to the corporation in 1971; another sold his stock to the corporation in 1972. Pursuant to the buy-sell agreement, each stockholder agreed not to compete with the corporation. There was never any discussion among the parties to these two transactions concerning the allocation of any portion of the stock purchase price to the covenants not to compete.

After the transactions occurred, however, the corporation's accountants decided that a portion of the stock purchase price in each transaction should have been allocated to the covenants. The corporation unilaterally allocated a part of each purchase price to the covenants, and sought to amortize the allocated amount over the terms of the covenants.

The IRS disallowed the deduction, and the district court upheld the IRS's decision. On appeal, the court held that the parties' failure to allocate a specific portion of the purchase prices to the covenants precluded the corporation from amortizing the asserted value of the covenants. The court stated:

> The law is clear that a repurchaser must prove that the parties mutually intended at the time of repurchase that some part of the lump sum be allocated to the seller's covenant not to compete. *Better Beverages, Inc. v. United States,* 619 F.2d 424, 430 (5th Cir.1980). No mention was ever made of any monetary amount being allocated to the covenant not to compete of either Connor or Mitchell. The record shows that the inclusion of the covenant itself was important to Brown, *but no mention of a price for that covenant was ever made.*

In fact, the accountant for Markham and Brown stated that the decision to allocate certain amounts for the covenant not to compete was made years after the signing of the 1966 agreement.

\*    \*    \*    \*    \*    \*

"[W]hen a taxpayer has failed to arrange his affairs so as to minimize his taxes, he cannot expect the court to do it for him *nunc pro tunc.*" *Balthrope v. Commissioner of Internal Revenue,* 356 F.2d 28, 34 (5th Cir.1966).

*Id.* at 1046 (emphasis added).

It is undisputed in the case at bar that the inclusion of Lumetta's covenant was similarly important to plaintiffs. Nevertheless, neither they nor Lumetta made any attempt to place a specific value on the covenant during their negotiations.[3] Moreover, their agreement was silent on the subject of allocating any value to the covenant. Instead of negotiating an allocation of value, they reached an unfortunate agreement to leave such an allocation to the IRS. The IRS properly declined to perform such an allocation for the plaintiffs; under *Markham & Brown, supra,* this Court is required to do likewise.[4]

In sum, there remain no material disputes of fact.[5] Having failed to make any attempt to allocate a part of the purchase price to Lumetta's covenant, plaintiffs are precluded as a matter of law from amortizing any portion of that purchase price over the term of the covenant. Defendant's Motion for Summary Judgment is therefore granted.

IT IS SO ORDERED.

---

**3.** Plaintiffs rely on *Moscowitz v. United States,* 314 F.Supp. 926 (E.D.Mo.1970) and *Kinney v. Commissioner,* 58 T.C. 1038 (1972) in arguing that summary judgment should be denied. Each of these cases is factually distinguishable from the case at bar. In *Moskowitz,* there was evidence that one of the parties to an agreement had insisted that a specific sum of $400,-000.00 be allocated to a covenant not to compete. Similarly, in *Kinney,* there was evidence that the parties to an agreement had discussed specific amounts to be allocated to a covenant not to compete, but that they had been unable to agree on an allocation.

**4.** In addition to the authority cited above, sound policy reasons dictate this result. The issue presented in the case at bar arises most frequently where the purchaser of a business purchases both the business's goodwill and a covenant from the seller not to compete. In attempting to allocate a part of the purchase price between these two items, the parties to the transaction possess different incentives. Because a covenant not to compete has an ascertainable useful life, its cost can be amortized over its useful life. Because the useful life of a business's goodwill cannot be readily ascertained, on the other hand, its cost cannot be amortized. 26 C.F.R. § 1.167(a)–3. Payments to the seller in connection with a covenant not to compete are taxed as ordinary income, while payments in connection with the sale of a business's goodwill are taxed as capital gains. Accordingly, the buyer will prefer that a large sum be allocated to the covenant not to compete and that a smaller sum be allocated to the goodwill. Conversely, the seller will prefer that a large sum be allocated to the goodwill and that a smaller sum be allocated to the covenant. A negotiation between two parties with such divergent incentives is more likely to produce an accurate allocation of value than is a later unilateral allocation by either of the parties.

**5.** Plaintiffs argue that another factual dispute precludes a grant of summary judgment. They argue that there is a factual dispute as to "the appropriate valuation of tangible assets for investment tax credit purposes." Brief at 2. Defendant notes, however, that this Court is without jurisdiction to consider this claim because it was not set forth in the administrative claim filed with the IRS. 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402–2(b). Moreover, the claim forms attached to plaintiffs' complaint clearly indicate that their claim in this suit is based entirely on the disallowance of their deduction for the cost of Lumetta's covenant.