George L. THEOPHELIS and Arlene Theophelis, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 83–1828.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 22, 1984.

Decided Dec. 27, 1984.

Fred Gordon, Mark A. Goldsmith (argued), Richard J. Briski, Troy, Mich., for plaintiffs-appellants.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Glenn L. Archer, Jr., Michael L. Paup—Chief Appel. Sec., Richard Perkins, John P. Griffin (argued), Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before EDWARDS and KEITH, Circuit Judges, and JOHNSTONE, District Judge.[*]

KEITH, Circuit Judge.

This is an appeal by the plaintiffs, George L. Theophelis and Arlene Theophelis, from a reported decision of the United States District Court for the Eastern District of Michigan granting summary judgment in favor of the United States. *Theophelis v. United States*, 571 F.Supp. 516 (E.D.Mich.1983). The Theophelises initiated this action under 28 U.S.C. § 1346(a)(1) seeking a refund of income taxes for the years 1976 through 1978. The taxpayers claim that the Internal Revenue Service incorrectly disallowed a depreciation deduction for a covenant not to compete acquired in the purchase of a retail store, the "Party Center," in 1976. Following discovery, the government filed a motion for summary judgment. After briefing and argument, the district court granted summary judgment. For the reasons set forth below, we affirm the judgment of the district court.

The material facts in this case are essentially undisputed. In the summer of 1975, the taxpayers became interested in purchasing a party store (a retail store selling beer, wine and incidental refreshments) from Matthew A. Lumetta. After inspecting the store and arranging to borrow the funds necessary for the purchase, the taxpayers and Lumetta agreed upon a purchase price of $145,000. Subsequently, the attorneys and accountants of the parties became involved in finalizing the additional terms and conditions of an agreement of sale. One such additional condition requested by the taxpayers was the inclusion in the agreement of a covenant not to compete on the part of the seller.

On November 28, 1975, the taxpayers executed an agreement to purchase the Party Center. Under paragraph 1 of the agreement, the taxpayers purchased:

the lease to such premises, the keys and all other indicia of possession, the goodwill of the business as a going concern, the Seller's interest in the liquor licenses, stock-in-trade, furniture, fixtures, equipment, transferable insurance policies, all contracts which have been made by or granted to the Seller in connection with the business, and all other property (except cash and accounts receivable) owned and used by the Seller in the business.

Joint Appendix at 43a. Under paragraph 2, the purchase price for "all of the assets referred to in Paragraph 1, other than the stock-in-trade," was set at $145,000. *Id.* The purchase price for the stock in trade was set forth separately in paragraph 3. Paragraphs 17 and 18 of the agreement contained provisions which served the function of covenants not to compete (hereinafter collectively referred to as the covenant) whereby the seller agreed that for a period of two years after the date of closing, he would neither (1) engage in any similar business within a ten mile radius of the Party Center, nor (2) solicit any sales from the industrial accounts on a list which was to be furnished to taxpayers. Joint Appendix at 52a.[1]

---

[*] Honorable Edward H. Johnstone, United States District Court for the Western District of Kentucky, sitting by designation.

1. Specifically, these paragraphs provide:
   17. *Restrictive Covenant.* The Seller covenants not to directly or indirectly engage in a like or similar business within a radius of ten (10) miles from 3940 East Outer Drive, Detroit, Michigan, for a period of two (2) years from and after the date of closing.
   18. *Industrial Accounts.* On the date of closing the Seller shall provide Purchasers with a list of all industrial accounts of the business.

Aside from the attribution of the entire $145,000 purchase price to the assets set forth in paragraph 1 of the agreement, and the separate purchase price for the stock-in-trade set forth in paragraph 3 of the agreement, the parties did not further allocate the purchase price among the specific items included in paragraph 1. Most importantly, no part of the purchase price was allocated to the covenant. In fact, the district court noted that the parties never even discussed the subject of an allocation to the covenant until their final meeting during which they executed the agreement. 571 F.Supp. at 517. At that time, the parties, in effect, agreed that they would *not* allocate any specific part of the purchase price to the covenant, but rather they would allow the Internal Revenue Service to determine its value when the first of the parties to the sale was audited. *Id.*[2]

On their 1976 federal income tax return, the taxpayers claimed that the tangible depreciable property purchased with the Party Center had a value of $100,000, and claimed an investment credit of $10,000. The return was audited and the Commissioner determined that the property's value was only $45,000. Subsequent to that audit, in 1980, the taxpayers filed amended returns for 1976, 1977 and 1978, and for the first time claimed that $75,000 was paid

for the covenant. The taxpayers sought to amortize the cost of the covenant over its two year life span, pursuant to Section 167 of the Internal Revenue Code. 26 U.S.C. § 167. The deduction was disallowed and after the claim for refund was denied, the taxpayers filed the instant refund suit in the district court.

■ It is well settled that the depreciation deduction authorized by Section 167(a)(1) of the Internal Revenue Code for property used in a trade or business applies to intangibles such as a covenant not to compete for a definite term, but it does not apply to good will. *See* Tres.Reg. §§ 1.167(a)–1, 1.167(a)–3. The deduction, amortized over the term of the covenant, is limited to the amount paid (or other tax basis) for the covenant. *See* 26 U.S.C. §§ 167(g), 1011, 1012. Thus, if a contract contains a covenant not to compete, but nothing has been paid for it, there is nothing to deduct.

■ Courts have frequently been called on to determine the amount properly allocable to a seller's covenant not to compete when a business is sold. Generally, the amount allocated by the parties' agreement is controlling, because they have competing and conflicting tax interests. *Balthrope v. Commissioner*, 356 F.2d 28, 31 (5th Cir.

---

Prior to the date of closing, the Seller shall have made a good faith effort to introduce the Purchasers to all industrial accounts on said list. The Seller shall not, directly or indirectly, solicit any sales, for products sold by the business, from any of the industrial accounts on said list for a period of two (2) years from and after the date of closing.

2. The district court's finding that the parties agreed not to allocate a portion of the purchase price to the covenant is supported by the admissions of Mr. Theophelis. For example, in Mr. Theophelis' deposition, there is the following colloquy:

Q. Did there come a point in time where a value was given to the covenant not to compete?
A. No, what we determined at the final meeting, and Mr. Grosberg brought this up, he said that we weren't going to get involved in any fighting over the covenant. The—what do you call it?
MR. GORDON: Good Will.

[A]. Good will and property. The first person audited would take what was to be determined, and the attorneys and everybody said, "hallelujah." They agreed right there on the spot.

Joint Appendix at 33a. Similarly, Mr. Theophelis stated in his affidavit in opposition to summary judgment:

6. At one of the meetings between [seller], me and our representatives, we discussed the issue of allocating a portion of the purchase price to the covenant not to compete.
7. At this meeting, Herbert Groseberg [sic], my accountant, suggested that the parties avoid a protracted dispute over the exact amount to be allocated to the covenant. Instead, he proposed that the results of the audit of the first party to be audited would be binding on the other parties. To this we all agreed and therefore did not specifically allocate any specific amount to the covenant not to compete.

Joint Appendix at 20a.

1966). The seller benefits with respect to his taxes by allocating little or nothing to the covenant, because whatever is allocated to it must be recognized as ordinary income, whereas the remainder of the sales price is normally recognized as capital gains and taxed at lower rates. The buyer, on the other hand, prefers allocating as much as possible to the covenant, because that amount is amortizable over the term of the covenant, allowing an ordinary income tax deduction, whereas the alternative—an allocation to good will—is nondepreciable and provides no such deduction. *Better Beverages, Inc. v. United States,* 619 F.2d 424, 425 n. 2, *explained and reh'g. denied,* 625 F.2d 1160 (5th Cir.1980).

The question presented by this appeal is what amount, if any, is deductible for a covenant not to compete when the parties' agreement of sale allocates the entire purchase price to assets other than the covenant? It appears that while our Court has not directly addressed this precise issue, there is substantial authority which supports the decision reached by the district court in this case.

For example, in *Major v. Commissioner,* 76 T.C. 239 (1981), the Tax Court addressed a similar situation in which a purchaser of a trucking business belatedly attempted to allocate a portion of the purchase price to the seller's covenant not to compete. In analyzing that case the Tax Court adopted an approach which placed "heavy emphasis upon the intention of the parties at the time the contract was entered into." 76 T.C. at 246. While the Tax Court also recognized that whether the covenant had independent economic significance or reality was another relevant factor. The Tax Court stressed that "[t]he economic reality test, however, is applied with a view to the parties' intention, e.g., whether the covenant was separately bargained for." *Id.; see also Peterson Machine Tools, Inc. v. Commissioner,* 79 T.C. 72, 81 (1982).

From our review of the record, it is clear that at the time the contract was entered into, the parties did not intend to allocate a portion of the purchase price to the covenant not to compete. In this respect, we note that the agreement between the parties contains no specific allocation of the purchase price to the covenant. This failure to allocate a portion of the purchase price to the covenant appears to be "good evidence that none was intended." *Major v. Commissioner,* 76 T.C. at 250. Also, we note the district court's uncontroverted finding that an allocation was never even discussed until the final meeting of the parties when they executed the agreement. *Theophelis v. United States,* 571 F.Supp. at 517. Further, when the parties did discuss this issue, they agreed *not* to allocate a portion of the purchase price to the covenant. *See supra* note 2. Finally, we note that on their tax returns, the taxpayers themselves did not even attempt to allocate anything to the covenant until almost four years after the transaction.

On appeal the taxpayers contend, in essence, that since the covenant not to compete was of some economic value to them, it was, therefore, improper for the district court to grant summary judgment and not resolve the proffered question of fact by determining the value of the covenant. With respect to its tax law consequences, this argument is misguided. In *Better Beverages, Inc. v. United States,* 619 F.2d 424 (5th Cir.1980), the purchaser of a going concern soft drink bottling and distribution business similarly sought to avoid summary judgment by inviting the court to examine the "real economic value" of a covenant not to compete to which no part of the purchase price had been allocated. In declining this invitation, the Fifth Circuit noted:

[S]ince [the buyer] seeks to prove its basis in the covenant by allocating to it a portion of the lump sum purchase price paid for the business, the evidence of value on which it relies may be said to have demonstrated a material fact issue that should have precluded summary judgment only if such evidence created a question not simply as to what would have been a fair and equitable apportionment, but as to what portion, if any, of

that lump sum price [the buyer] actually was required to pay to obtain the covenant from [the sellers].

619 F.2d at 428 (footnote omitted).

On its facts, the case at bar is not essentially different from *Better Beverages.* In both cases the parties initially established the fundamental terms of their agreement and the purchase price for the business before a covenant not to compete was included in the final contract. In both cases the subsequently added covenant was not accompanied by any increase in the previously agreed upon purchase price.[3] Also, in both cases, after having failed to specifically agree to allocate any portion of the purchase price to the covenant, the taxpayer later unilaterally attempted such an allocation.[4] Given this similarity between the two cases, the Fifth Circuit's language from *Better Beverages* is particularly appropriate.

Upon appeal the taxpayers seek to rely principally upon three cases. *Peterson Machine Tool, Inc. v. Commissioner,* 79 T.C. 72 (1982), *Wilson Athletic Goods Mfg. Co., Inc. v. Commissioner,* 222 F.2d 355 (7th Cir.1955), and *Illinois Cereal Mills, Inc. v. Commissioner,* 46 T.C.M. (CCH) 1001 (1983). The taxpayers attempted reliance is inapposite as each of these cases is distinguishable from the case at bar. In *Peterson Machine Tool,* a purchaser of an equipment manufacturing and distribution business was allowed to allocate a portion of the purchase price to covenants not to compete, although the contract of sale had not identified any specific portion of the price as allocable. In *Peterson Machine Tool,* however, the contract of sale clearly stated: "For the total purchase price of

$280,000.00, each of the Sellers shall (1) sell to the Buyer the number of shares of the Company set forth below opposite his name ... and (2) execute the covenant not to compete as set forth in numbered paragraph 12 of this Agreement...." 79 T.C. at 78. Further in paragraph 12, the contract clearly spelled out: "It is the intention of the Sellers and the Buyer that the execution of these covenants not to compete be considered materially significant and essential to the closing ... and that such covenants are a material portion of the purchase price set forth hereinabove." 79 T.C. at 78–79.

The sale contract in *Peterson Machine Tool* is thus immediately distinguishable from the contract of sale in the instant case. In *Peterson Machine Tool,* in the initial paragraph of the contract, the purchase price was unequivocally attributed, in part, to the execution of covenants not to compete. In the case at bar the purchase price is fully attributable to various assets of the business other than the covenant not to compete. *See supra* at 85–522; Joint Appendix at 43a–44a. Further, in *Peterson Machine Tool,* there is extremely strong language in the contract stating that the covenants not to compete were "materially significant and essential to the closing" and that such covenants were a "material portion of the purchase price." The Tax Court found this language to be "most persuasive evidence of what the parties actually intended." 79 T.C. at 83. Whereas in the instant case, the district court found "that the parties undisputedly agreed *not* to allocate any specific part of the purchase price to the covenant." *Theophelis v. United*

---

**3.** It should be noted we do not hold that as a matter of contract law such a subsequently added covenant is unenforceable between the parties. *Cf. Better Beverages, Inc. v. United States,* 619 F.2d at 428 n. 5. But rather, we note that as a matter of tax law the taxpayer bears the burden of establishing his basis in such a covenant, and the lack of any clearly attributable portion of the purchase price does not assist a taxpayer in discharging this burden of proof. *Cf. id.* at 428.

**4.** In this respect we note that the taxpayer in *Better Beverages* was in a stronger position than the Theophelises because that taxpayer at least initially treated a portion of the purchase price as attributable to the covenant not to compete. 619 F.2d at 427. Whereas the taxpayers at bar did not attempt to allocate a portion of the purchase to the covenant not to compete until almost four years after the transaction was concluded. *Theophelis v. United States,* 571 F.Supp. at 518.

*States*, 571 F.Supp. at 517 (emphasis in original).

The taxpayers' reliance upon *Wilson Athletic Goods Mfg. Co., Inc. v. Commissioner*, 222 F.2d 355, is also misplaced as this case too is distinguishable. In *Wilson Athletic Goods*, a major sporting goods manufacturer purchased a shoe factory, which produced the athletic shoes marketed under the "Wilson" trade name, and a covenant not to compete from the former owners. The purchase price for the factory was some $142,000 greater than the value of the shoe factory's current assets, machinery and equipment. The Seventh Circuit upheld the allocation of $132,000 of the purchase price to the covenant not to compete. In reaching this result, the Seventh Circuit noted that the covenant not to compete was an item of value to Wilson and that Wilson was not interested in acquiring the good will of the shoe company.[5]

By contrast, in the instant case it appears to this Court that the good will and the customers of the Party Center were exactly what the Theophelises sought to acquire by the covenant not to compete. In his deposition, Mr. Theophelis discussed the circumstances which prompted him to seek a covenant not to compete:

A. I was fearful, because he [the seller] had no other business to go into. He was talking about another party store that was located in Birmingham at the time. Also, the fact that his brother owned a party store, that some of the accounts would be slipped away from my store, especially the commercial or business accounts that could be servicing [sic] virtually anywhere, doesn't matter, the particular location. So, that's one of the pitfalls you look for in a business anyway. As I had learned over the years, is that you buy it and not get involved in any slippage of accounts. After all, you are buying on the full amount of goods sold which is going to be maintained

Q. Goods sold?

A. The gross sales would be maintained after you purchased it.

Q. The going concern value of the business?

A. That's right.

Joint Appendix at 34a–35a. Thus, it appears to this Court that in seeking a covenant not to compete, the taxpayers principally sought to maintain the good will and going concern value of the purchased party store. *Cf. Ullman v. Commissioner*, 264 F.2d 305, 307–08 (2d Cir.1959) (amount paid for a covenant not to compete usually deductible to covenantee "unless the covenant is so closely related to a sale of good will that it fails to have any independent significance apart from merely assuring the effective transfer of that good will").

Likewise, we believe the taxpayers' reliance upon *Illinois Cereal Mills, Inc. v. Commissioner*, 46 T.C.M. (CCH) 1001 (1983) is also misplaced. In *Illinois Cereal Mills*, the Tax Court upheld the allocation of a portion of the purchase price to a

---

5. In this respect the court relied upon the undisputed testimony of Wilson's president concerning the acquisition of the Wisconsin Shoe Company:

The witness said further that his company was not interested in purchasing the good will of Wisconsin; that it had its own distribution means and methods, its own customers' lists, and its own brand names; that the Wisconsin company had no good will to which he could ascribe any value to the taxpayer, but that it did have the factory and the machinery which petitioner desired, and which it could use, provided it had a covenant on the part of the owners not to compete. He testified that petitioner did not acquire the Wisconsin establishment in order to obtain customers, as it already had more than it could supply; that it was not interested in Wisconsin's customers; that, even after purchasing the assets, the taxpayer was unable to supply all its demands from its own production; ... that although the taxpayer's accounting department had allocated the sum of $10,000 for good will, he was of the opinion that no value should be attributed to that item, and that the covenant not to compete should have been valued at the entire $142,000 rather than $132,000 which the accounting department allocated to it. He emphasized that assurance of non-competition was the important element of the entire transaction.

222 F.2d at 356–57.

covenant not to compete. In reaching its decision the Tax Court noted:

> The final written agreement contained a five-year covenant not to compete, set out in a separate paragraph of the document. There is noting [sic] in the record to suggest that this specific time-limited covenant was just a part of the general goodwill that was being transferred to ICM. Based on the entire record, we are satisfied that the covenant not to compete had substantial independent economic significance and that both parties considered it as a valuable part of the total consideration for the transaction.

46 T.C.M. (CCH) at 1022. However, as was discussed above, we believe the covenant in the instant case, by contrast, was merely used as a means of assuring the effective transfer of the good will of the purchased party store.

In sum, we find no evidence to support the taxpayers' allegation that the parties intended to allocate some portion of the purchase price to the covenant not to compete. Rather, we agree with the finding of the district court that the parties agreed *not* to allocate any portion of the purchase price to the covenant. We also find that the economic realities underlying the transaction do not suggest that the covenant was a separately bargained for item. But rather, we find that the covenant was sought as a means to secure the effective transfer of the store's good will and going concern value. Finally, we find that the authorities upon which the taxpayers seek to rely are distinguishable from the facts presented by the instant case.

Accordingly, the judgment of the Honorable Philip Pratt of the United States District Court for the Eastern District of Michigan, is hereby affirmed.