**Sam B. JONES, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. 5:93 CV 0680.**

United States District Court, N.D. Ohio, Eastern Division.

April 22, 1994.

Bernard D. DelGuzzi, DelGuzzi & Scavdis, Ravenna, OH, for Sam B. Jones and Louanna Jones.

Alan M. Shapiro, Dept. of Justice—Tax Div., Washington, DC, for U.S.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. BACKGROUND

Plaintiffs, Sam B. Jones and Louann B. Jones, contend that the United States improperly assessed $100,000 of taxable income against them for the 1981 tax year. Plaintiffs seek a refund of federal income taxes, penalties, and interest claiming that they never received any portion of the $100,000 paid in consideration of a covenant not to compete. 28 U.S.C. § 1346(a). The United States moves for summary judgment on all counts (Docket No. 23) and contends that there is no genuine issue of material fact that the $100,000 was taxable income to Plaintiffs: first, because under the legal interpretation of the sales agreement at issue Mr. Jones earned, and had the power to control the use of, the $100,000; and second, because the undisputed evidence shows that Mr. Jones did in fact direct, control and enjoy the benefit and use of that money.

In August of 1981, the Bryan Jones Agency, Inc. and its president and sole stockholder plaintiff Sam B. Jones, sold the business assets of the agency and a covenant not to compete to Allan Stoessner for the price of $539,000. The contract of sale ("sales agreement") named Allan Stoessner as the "Buyer," and Sam B. Jones and the Bryan Jones Agency, Inc., collectively, as the "Seller." The sales agreement indicated that $100,000 of the $539,000 purchase price would serve as consideration to support a return promise for the covenant not to compete.

The sales agreement provided:

Whereas the Seller desires to sell to Buyer all of the assets and interest in and of the Bryan F. Jones Agency, Inc., a business engaged in the sales of insurance policies and programs in the general area of Portage County and immediate vicinity, including expiration lists, office furniture, fixtures, goodwill, the use of the name "Bryan F. Jones Agency" and a covenant by the seller, Sam B. Jones, not to compete as set forth in more detail below, ...

F. The Seller, either Sam B. Jones, individually, or The Bryan F. Jones Agen-

cy, Inc., shall not, directly or indirectly, for a period of three years from the closing date [compete against the Buyer] ...

e. In connection with the foregoing, it is understood that the Seller will maintain and continues to pursue business in the entity known as Alliance Underwriters of Ohio, Inc., provided, however, that in pursuing that business the Seller may not violate or infringe the covenants contained in F. a through d. of this agreement.

(Gov. Ex. 1, ¶ 2 & ¶ F(e)).

The Bryan Jones Agency, which had since the sale changed its name to the Sam Jones Agency, Inc. (hereinafter "1981 Jones Agency"), reported income of $439,000 from the sale of its business assets to Mr. Stoessner.[1] The corporate tax returns of the 1981 Jones Agency and the joint tax return of Plaintiffs, Sam B. Jones and Louann B. Jones, only account for $439,000 of the $539,000 purchase price agreed to be paid by Mr. Stoessner. Neither return accounts for the remaining $100,000 which is the exact amount paid in consideration of the covenant not to compete. Thus, the question becomes who, as between the 1981 Jones Agency and Plaintiffs, may be taxed for the remaining $100,000 of undeclared taxable income.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). *See, e.g., United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985) and cases cited therein. The Court's favorable treatment of facts and inferences, however, does not relieve the nonmoving party of his

responsibility "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party satisfies his burden to show an absence of evidence to support the nonmoving party's case, *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553, the party in opposition "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Although the showing required of the nonmoving party by Rule 56 does not go so far as to require that all opposition evidence be in a form admissible at trial, the rule does require the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. General averments or conclusory allegations of an affidavit, however, do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). Furthermore, unsworn statements and affidavits composed of hearsay and nonexpert opinion evidence, "do not satisfy Rule 56(e) and must be disregarded." *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir.1991) (quoting *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir.1979) and citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970)). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [ ] earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986) (citing *Bie-*

---

1. The declaration on the corporate tax return of the 1981 Jones Agency suggests that the agency reported income on an accrual rather than a cash basis. Plaintiffs fail to come forward with specific facts to show otherwise. Fed.R.Civ.P. 56.

*chele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)).

On a motion for summary judgment, the Court will consider "[o]nly disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Nonmaterial facts will not be considered. Neither will the judge attempt to weigh the material evidence or determine its truth. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510.

Where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553 (equating the standard for a directed verdict under Rule 50(a) with the summary judgment standard of Rule 56). If the evidence is "merely colorable," or is "not significantly probative," the Court may decide the legal issue and grant summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citing *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (*per curiam*) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512).

## III. INCOME FROM THE SALE OF BUSINESS ASSETS AND THE COVENANT NOT TO COMPETE

In the seminal case of *Commissioner v. Danielson,* 378 F.2d 771 (3d Cir.1967) (en banc), *cert. denied,* 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967), the Third Circuit addressed the tax implications of an asset sales agreement that explicitly allocated a sum of the purchase price to the selling stockhold-

ers' covenants not to compete. The *Danielson* court held that the amount a buyer of a business pays the seller for his covenant not to compete is ordinary income to the covenantor and an amortizable item for the covenantee. 378 F.2d at 775 (citation omitted).[2] The Third Circuit set forth what has become to be known as the *Danielson* rule:

[A] party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc.

378 F.2d at 775.

■ The *Danielson* rule has been adopted by the Sixth Circuit Court of Appeals and the case of *North American Rayon Corp. v. Commissioner,* 12 F.3d 583 (6th Cir.1993) provides the latest explanation of its effect. As stated by the Sixth Circuit, "if a taxpayer has entered an asset sales contract that unambiguously allocates the purchase price among the subject assets, then the taxpayer can challenge the tax consequences properly flowing from those allocations only by showing that the term would be unenforceable between the parties." *North American Rayon,* 12 F.3d at 589. Where "the allocation of purchase price in the asset sale agreement is unambiguous," as is the case here, "the Commissioner can bind [a taxpayer] to this allocation unless [he or she] can show that the terms of the contract are unenforceable due to mistake, undue influence, fraud, duress, etc." *North American Rayon,* 12 F.3d at 589. Where the contract terms regarding the allocation of the purchase price to a noncompete covenant are ambiguous or where there is no contract between the parties, then the court will not apply the *Danielson* rule. *North American Rayon,* 12 F.3d at 588 (explaining *Patterson v. Commissioner,* 810 F.2d 562, 572 (6th Cir.1987)).

■ Where there is no allocation of the purchase price in the agreement which in-

---

**2.** The Sixth Circuit has reiterated that "amounts received by a seller for a non-competition covenant are considered to be given as compensation

for lost earnings and, as such, are taxable as ordinary income." *Patterson v. Commissioner,* 810 F.2d 562, 569 (6th Cir.1987).

cludes a covenant not to compete, the court will examine the mutual intent of the parties at the time of their agreement to determine whether the evidence indicates that some portion of the price has been allocated to the covenant, "absent a clear indication that such allocation is totally contrary to economic reality." *See Patterson v. Commissioner*, 810 F.2d 562, 570–71 (6th Cir.1987) (following the "economic reality" proviso outlined by *Schulz v. Commissioner*, 294 F.2d 52, 55 (9th Cir. 1961)).[3] The inquiry into mutual intent which considers "the language of the contract itself as well as the circumstances surrounding its negotiation" does not prohibit the possibility that the parties allocated no portion of the contract price to the covenant. *Patterson*, 810 F.2d at 571–72 & 571 n. 6 (citing *Theophelis v. United States*, 751 F.2d 165, 168 (6th Cir.1984)). However, under the *Danielson* rule, the court does not reach the mutual intent inquiry where the parties seek to vary the terms of the contract unless it is first established that the material terms of the contract are ambiguous. *See Patterson*, 810 F.2d at 572.

■ In this case there can be no ambiguity in the sales agreement between the "buyer," Allan Stoessner, and the "Seller," Sam B. Jones and the 1981 Jones Agency. Its meaning is a matter of law for the Court to decide. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146 (1978); *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 15 OBR 448, 448, 474 N.E.2d 271, 272 (1984). The sales agreement unambiguously provides that the Seller, Sam B. Jones, sole stockholder of the Bryan F. Jones Agency, in consideration of $100,000 paid by Mr. Stoessner, promised not to compete against Mr. Stoessner under the terms set forth in the sales agreement. The obligation was personal and made by Mr. Jones. The fact that upon the sale of the business

assets of his corporation, Mr. Jones agreed to permit the remaining corporate shell of the 1981 Jones Agency to become a joint obligor on his covenant does not change the obvious nature of the agreement. There is no evidence to suggest that anyone but Mr. Jones, including his corporation, retained the ability to make the personal noncompetition covenant on his behalf. Given that there was a binding contract between the Buyer and Seller under a valid sales agreement which agreement Plaintiffs do not challenge, Plaintiffs have put forward no argument to dispute the legal conclusion that Mr. Jones had the contractual right to assign his "right" to receive payments made in consideration of his personal promises under the terms of the sales agreement.

■ It is fundamental that a taxpayer cannot assign a portion of his income in order to avoid tax liability on that income, notwithstanding anticipatory arrangements and contracts devised to prevent the income from vesting even for a moment in the person who earned it. *E.g., Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 241, 74 L.Ed. 731 (1930). Moreover, "[t]he power to dispose of income is the equivalent of ownership of it." *Helvering v. Horst*, 311 U.S. 112, 118, 61 S.Ct. 144, 148, 85 L.Ed. 75 (1940). Thus, Plaintiffs' assertion that they never "received" the $100,000 is irrelevant to the question of whether the United States Tax Code considers that money to be taxable income. There is simply no evidence that Mr. Jones acted as a mere conduit or agent through which the proceeds of the sale passed on its way to another who was entitled to the income.

Notably, in their response to the Government's motion for summary judgment, Plaintiffs fail to make any legal argument, much less an evidentiary one, which addresses the threshold issue of contract interpretation.

3. Of course in matters of taxation, economic substance prevails over form when there is reason to suspect either collusion or overreaching. *E.g., Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). *Compare also Green v. Commissioner*, 855 F.2d 289, 294 (6th Cir.1988) (Under the *Danielson* rule it is

proper to rely on the "marital property" language of a divorce decree in determining a taxpayer's income tax assessment, notwithstanding the fact that the decree did not directly address the tax consequences of the property settlement, as long as the evidence does not suggest that the parties are intentionally trying to evade their tax responsibilities.).

Plaintiffs merely attempt to distinguish the case of *Cox v. Helvering*, 71 F.2d 987 (D.C.Cir.1934) and through that distinction attempt to lend support for their position.[4]

In *Cox* the court held that the additional amount paid by the purchaser of a corporate business for the agreement from the corporation's stockholders to refrain from entering into competition with the purchaser was taxable as income to the principal stockholder of the corporation regardless of whether the amount was paid to the corporation or to the stockholder because "it was paid as an incident of and in support of the contract of sale." 71 F.2d at 988. Plaintiffs state: "In the present case, no addition [sic] amount was paid, but rather an allocation of the agreed sales price was paid." (Pla.Resp.Summ.J. at 6). Thus even if this Court were to credit the position that there is some substantive difference between a mere "allocation" of a sales price and an amount which is "additional" (a proposition which *North American Rayon, supra*, rejects), Plaintiffs do not submit specific facts or law to rebut the conclusion that it was Mr. Jones who, under the terms of the sales agreement, had the right to make that "allocation" of income as it applied to the consideration paid for his personal promises.

The United States contends that there is no genuine dispute that under the terms of the sales agreement Mr. Jones earned the $100,000 for giving his personal covenant not to compete, and Plaintiffs have come forward with no legal argument or factual evidence to dispute that contention. Plaintiffs bear the burden of persuasion to convince the trier of fact that reasonable minds could conclude from a preponderance of the evidence that they were improperly assessed the $100,000 as taxable income. This Plaintiffs have failed to do. As Plaintiffs have failed to come forward with specific facts showing a genuine issue remains for trial, summary judgment is appropriate. In light of the Court's disposition of this matter it need not address Plaintiffs' response to the Government's second argument supporting the grant of summary judgment in its favor.

## IV. CONCLUSION

In light of the above, the motion of Defendant, the United States of America, for summary judgment against Plaintiffs on all counts in the Complaint (Docket No. 23) is GRANTED. Judgment accordingly.

IT IS SO ORDERED.

---

4. Plaintiffs cite this Court to one other case in support of their position, namely *Joseph Lupowitz Sons, Inc. v. Commissioner*, 497 F.2d 862 (3d Cir.1974). The case of *Joseph Lupowitz Sons* speaks to the issue of whether net transfers of monies from one corporation to a second corporation could be treated as constructive dividends and thus income to the shareholders to the second corporation. The Court need not reach the issue of constructive dividends because Plaintiffs' liability for the $100,000 paid in consideration of the covenant not to compete attaches at a much earlier point.